McLaran v. Mead et al.

---

CHARLES McLARAN, Appellant, *v.* MARTHA MEAD AND LUCIEN MEAD, HER HUSBAND, Respondents.

48 115
d154 427

1. *Husband and wife — Fraudulent conveyances — Purchase in the name of the wife, out of the property of her insolvent husband, creates a trust in favor of the husband's creditors.*—Where property is conveyed to a married woman as a cover to enable her husband to hold and enjoy the property through her as his own, if it is shown that the purchase money was in fact paid by him, or that the credit was given to him, the wife should be held to have taken the property in her name for his use, and a trust would result to him for the benefit of his creditors.

2. *Husband and wife — Fraudulent conveyances — Purchase of property with money raised by a pledge of wife's property, or on credit given to her, does not create a resulting trust for her husband's creditors.*—Where property

is purchased in the name of a married woman, with money raised on a note made by her, secured by a pledge of her own property, or by credit given to her on the faith of such a pledge, and not to her husband, and if she designed to purchase for herself, with her own means, and with no fraudulent intent, the fact that the husband signed the note with her and has a marital interest in her property does not create a resulting trust in favor of his creditors. When a married woman is not dealing with her sole and separate estate, so that it becomes necessary that some one else should be a party to the note given to make it valid, and that her husband should join in the deed of trust, the mere fact of such joinder by the husband is not a badge of fraud, but something more should appear — as that the credit was given to the husband, or that he has paid or arranged to pay, in whole or in part, out of his own means.

### *Appeal from St. Louis Circuit Court.*

*Glover & Shepley*, for appellant.

I. Lucien Mead took an estate in the land of his wife for her life, and that passed by the sheriff's deed. (Boyce's Adm'r v. Cayce, 17 Mo. 47 ; Schneider v. Staihr, 20 Mo. 269 ; 2 Kent, 110–111.) If, then, the deed of McLain vested the fee in Martha Mead, the husband took a fee during the marriage, and this, by the sheriff's deed, passed to McLaran.

II. Lucien Mead being insolvent, his creditors had a valid claim on whatever property proceeded from his means or credit. Mrs. Mead had no separate estate. She had property inherited from her father, who died in 1857, but it was all covered by the marital rights of her husband, Lucien Mead. He had the right to take the rents and profits during marriage, and to convey it in mortgage or otherwise to that extent.

III. The instruction No. 4 ought to have been given. The property conveyed to Mrs. Mead by McLaran was, in contemplation of the law, paid for by Lucien Mead. Mrs. Mead had no present property. Her credit, if she had any, was her husband's. The money raised to pay to McLain was raised on the husband's note and the wife's, but the wife's note was void. (Freer v. Walker, 1 Bailey, 184 ; Chouteau v. Merry, 3 Mo. 254 ; Aldridge v. Burlison, 3 Blackf. 201 ; Fowler v. Shorer, 7 Mass. 14 ; Wadleigh v. Glines, 6 N. H. 17; Sto. Prom. Notes, 87, § 85.) The note, then, in contemplation of the law, was only the note

of Lucien Mead. The credit of Mrs. Mead was not pledged by the note at all. The deed of trust made to secure the note of Lucien Mead conveyed Lucien Mead's property—his estate for his wife's life. The money, then, was raised on Lucien Mead's credit—that is, his note—and on Lucien Mead's security, to-wit, his conveyance of his property—his life estate. Unless Lucien Mead had joined in the deed of trust, so as to pass his interest in the property, no loan would have been effected. (Keeny v. Good, 21 Penn. St. 353.) Lucien Mead, therefore, contributed both by his means and his credit to raise the $2,000 that paid for the property. Goods purchased by the wife on her credit are liable to husband's creditors; her skill, industry and credit belong to her husband. (Robinson *et al.* v. Wallace, 39 Penn. St. 129; Keichline v. Keichline, 54 Penn. St. 77; Aurand v. Aurand, 43 Penn. 363; Marshall v. Pearce, 12 N. H. 130; Gault v. Saffin *et al.*, 44 Penn. St. 307; Baringer v. Stiver, 49 Penn. St. 129; Waddingham v. Loker, 44 Mo. 134; Worth v. York, 13 Ired. 206.) If part of the consideration is fraudulent, the whole deed is void as to creditors. (Ticknor v. Wiswell, 9 Ala. 311; Patterson v. Campbell, *id.* 933; Hopkins v. Carey, 23 Miss. 54; Burke v. Murphy, 27 Miss. 167; Pauley v. Vogel, 42 Mo. 291; Baringer v. Stiver, 4 Am. Law Reg., N. S., 559; Hoffman *et al.* v. Toner, 49 Penn. St. 232; Merrill v. Smith, 37 Me. 394.)

IV. If Mrs. Mead took the deed in consideration of money raised by means of her husband's credit, or by means of her own credit, based on her common-law property or otherwise and not on her separate property, then the deed was fraudulent, regardless of her interest. The court erred in instructing the jury that an insolvent debtor, conveying property by absolute conveyance, which he records, but with an agreement that the deed was only a security, was a fair transaction as to creditors of the debtor. The instruction was calculated to mislead the jury. If the fact did not make the absolute deed fraudulent, it was a badge of fraud, and the instruction ought not to have been given. (Halcombe v. Ray, 1 Ired. 340; Coburn v. Pickering, 3 N. H. 415; Winkley v. Hill, 9 N. H. 31; Smith v. Lovell, 6 N. H. 67.)

*Lackland, Martin & Lackland*, with whom were *Krum & Decker*, for respondents.

I. The claim that Lucien Mead had a life estate in the land of his wife, which became vested in McLaran by virtue of the execution sale, was excluded from all consideration by the written pleadings, which submitted the validity of Mrs. Mead's title as the only issue in the case.

II. Mrs. Mead's purchase from McLain could not inure to the use of her husband's creditors unless it was acquired with her husband's money, and not her own. The money with which her purchase was paid proceeded from her own estate — not separate estate, but such as had descended to her from her father. She executed certain promissory notes, secured by a deed of trust upon her lands, and sold the notes in the market. With the proceeds of such sale she paid for the lands in controversy. Her husband joined with her in the execution of these instruments, but only for the purpose of adding validity to the security. The money was raised upon the faith of that security. It was received by Mr. Stagg as agent of Mrs. Mead, and, as such, paid over to the vendor of this land. Her husband never touched the proceeds, nor reduced, nor claimed to reduce, the same to his possession. It has been settled in this State that the proceeds of a wife's real estate belong to her, and not to her husband. (Crofts v. Bolton, 31 Mo. 355; Kinner v. Walsh, 44 Mo. 65.)

III. Any small interest in the way of a life estate which Lucien Mead may have had in the land from which the money proceeded, would be no ground for avoiding the purchase of Mrs. Mead with such money. To avoid a purchase with money which proceeded principally from her own estate, would be surrendering to her husband's creditors something which neither they nor her husband had any claim to. If Mr. Mead had any inconsiderable interest in such proceeds, that interest might be reached in a proper proceeding to subject the lands to the enforcement of his creditors' claims to the extent of such interest. They have no equity when they attempt to avoid her interest also. The court, therefore, properly refused the instruction offered by attorneys

of appellant, McLaran, which sought to avoid the deed to Mrs. Mead if Mr. Mead contributed anything to the purchase. It might be void as to his interest, which was a small thing, and still be valid as to her interest, which comprised the principal part of the purchase money, being the proceeds of her fee simple estate.

BLISS, Judge, delivered the opinion of the court.

The plaintiff, and defendant Martha Mead, each claimed to own the same undivided fourteenth of certain real estate belonging to the Jennings estate, the plaintiff having purchased it at sheriff's sale as the property of Lucien Mead, and the said Martha having before received a deed of the same. The issues arose in a suit for partition instituted by F. Rayburn and others, and this interest was set apart to the contending parties, in whose name I have entitled the case, as in controversy. After it was set off, the said parties voluntarily appeared for an adjustment of their adverse claim, and the present plaintiff set forth his title, alleging that the property was purchased by said Lucien Mead of John C. Jennings and wife in 1856 ; that it continued to be his property until November, 1865, when it was sold at sheriff's sale upon a judgment in favor of the Union Bank, and bought by the plaintiff.

He charges that said Lucien, in September, 1862, conveyed the property to one Montague to defraud his creditors and secure a sum of money borrowed of him ; that he paid up said sum of money, and caused said Montague to convey the same to one McLain, with intent to defraud his creditors and secure an advance by said McLain ; and having paid up all that said McLain had advanced, he caused him, in June, 1865, to convey the same property to his said wife Martha Mead, with intent to defraud his creditors. He therefore prays that the title to the land be vested in him. Defendants deny all fraud, and set out a purchase by, and a good title in, the said Martha Mead. The issue was submitted to a jury, who found for the defendant.

The plaintiff offered in evidence the deeds from Jennings to Lucien Mead, from Lucien Mead to Montague, from Montague to McLain, and from McLain to Martha Mead, the last of which

was dated some six months before his purchase at sheriff's sale. He also showed that the deed to Montague, although absolute on its face, was intended as a security for a loan of $1,000, and that Montague's deed to McLain was made at Lucien Mead's request as security for $2,000 loaned him, $1,000 of which was to pay Montague, and the other thousand was advanced some time afterward. In regard to Mrs. Mead's purchase, McLain testifies that he conveyed to her for the $2,000, which was first met by notes of $1,000 each at thirty and sixty days, made by Mr. and Mrs. Mead; that he executed but did not deliver the deed until after the notes were paid, and that the money was advanced on the notes by Mr. Stagg. The plaintiff also showed the judgment and execution under which he purchased, and the way the debt accrued.

Mr. Stagg, on behalf of Mrs. Mead, testified that he loaned the money to her which went to satisfy the debt due McLain, for which he received notes executed by said Lucien and Martha Mead, which were secured by deed of trust on Mrs. Mead's property. She also offered other testimony tending to show that the purchase was made upon her own credit and for her own use; that the property with which she secured the notes, upon which Mr. Stagg advanced the money to purchase or redeem of Mr. McLain, belonged to her, being inherited from her father's estate.

The court gave three instructions at the instance of the plaintiff, one of which pertained to Lucien Mead's curtesy in the premises, and was irrelevant, as the title alone was in issue; but the other two were to the effect that if the said Lucien was insolvent, and by his means or credit contributed to raise the money to pay the said debt to McLain, then the conveyance to Mrs. Mead was fraudulent as against her husband's creditors. But the court refused the following instruction, to-wit: "If the jury find from the evidence that Lucien Mead failed in business about the year 1861, and was in pecuniary embarrassment, owing debts, till the conveyance by the sheriff to McLain, and that the property in dispute in 1856 belonged to Lucien Mead, who conveyed it by absolute deed to Montague, but with an understanding

that Montague held it as security for money advanced to said Mead; that said Mead repaid Montague and caused him to convey said property to McLain by absolute deed, but with an understanding that McLain held it only as security for money advanced or to be advanced to said Mead, which money said Mead had a right to repay to McLain, and take the property or find a purchaser who would buy it from McLain, and accordingly said McLain conveyed said property to Martha Mead, wife of said Lucien, in consideration of $2,000 paid to said McLain, and said $2,000 was obtained from Henry Stagg on a note payable to Lucien Mead, signed by Lucien Mead and Martha Mead, and indorsed by said Lucien to said Stagg, and secured by the deed of trust to said Stagg, read in evidence, conveying the interest of said Lucien Mead and Martha Mead, then his wife, in the land therein named, and said money so obtained from Stagg was paid as aforesaid to McLain, the jury ought to find that said Lucien Mead contributed by his means and credit to procure said conveyance to Martha Mead, and that the same was and is fraudulent and void as against the judgment and execution in favor of the Union Bank and sheriff's deed to McLain, provided that the jury find that said sheriff's deed is genuine." From this instruction it is seen that the jury were to be told that fraud in the transfer to Mrs. Mead was to be presumed from the fact that her husband signed and indorsed the notes given for the money raised to purchase the land in controversy, and from the fact that he had a marital interest in the land with which she secured the notes.

If the action of Mrs Mead in the premises was a cover to enable her husband to hold and enjoy the property through her as his own — if it had been shown that the notes upon which the money was raised were paid by him, or that the credit was given to him, and that he, and not the security furnished by her, was relied upon — then Mrs. Mead should be held to have taken the property in her own name for his use, and a trust should result to him for the benefit of his creditors. But if the purchase money was raised upon a pledge of the wife's property, if the credit was given to her on the faith of such pledge, and not to

her husband, and if she designed to purchase for herself with her own means, and with no fraudulent intent, the fact that the husband signed the notes and has a marital interest in her property, does not create such resulting trust.

This is not the sole and separate property of the wife, and she was unable to contract alone in regard to it. It became necessary, therefore, that some one else should be a party to the note to make it valid, and also that her husband should join in the deed of trust. Therefore the mere fact of such joinder is not a badge of fraud, but something more should appear—as that the credit was given to the husband, or that he has paid or arranged to pay, in whole or in part, with his own means.

There is nothing technical or artificial in the matter under consideration. The real property of the wife is not subject to execution against the husband for his debts, nor should it be ; nor will the husband be permitted to hold property in the name of his wife, or withdraw it from the reach of his creditors and give it to her, so as to shield it from such execution.

The error of the instruction refused consisted in its assumption, as matter of law, that the execution of the note and the deed by Lucien Mead under the circumstances, in order to raise out of Mrs. Mead's estate the purchase money of the property in controversy, made the transaction a fraudulent one ; and not only so, but that a trust resulted in favor of Mr. Mead's creditors, which was purchased by the plaintiff, although it does not appear that a dollar had been paid by the debtor or was expected from him. To sustain such an instruction would effectually deprive a married woman of the power of dealing with her estate, unless held to her separate use. If she cannot mortgage, or execute a deed of trust in the nature of a mortgage, for the purpose of raising money out of her estate with which to purchase other property, she may not sell for the same purpose, but can only hold.

I cannot see the controlling significance of the fact that the husband signed the note in order to make such a contract as could be secured by the trust deed, although it would be an important circumstance if other facts in connection with it showed

that the money was procured upon his credit, or was refunded from his means; nor can I see the significance of the fact that he executed the trust deed, and thus parted with his curtesy, for the deed could be executed in no other manner; and besides, his curtesy in the land purchased is certainly equal to that in the land conditionally sold.

Counsel for plaintiffs have referred us to numerous cases which forbid the covering up of the husband's property by the pretended ownership of the wife; but in not one of them is the property held to be his when it was owned by the wife at the time of her marriage, or where it was purchased with property that was thus owned by her. Courts will scrutinize purchases by the wife of an insolvent husband, not for the purpose of placing any disability upon her, but only to protect his creditors from fraudulent practices in which he may be aided by her. The strongest language I have seen is contained in the opinion in Gault v. Saffin and Wife, 44 Penn. St. 307, where Read, J., remarks: "The married woman's act of 1848 has given rise to various decisions securing the creditors of the husband against the fraudulent covering of his property through the agency of the wife, under the pretense that it is her separate estate. It is now settled law that evidence that the wife purchased real or personal estate amounts to nothing unless it be accompanied by clear and full proof that she paid for it with her own separate funds — not that she had the means of paying, but that she in fact thus paid. This is a definite, precise and just rule."

The act referred to differs from anything in force with us in regard to the power of the wife over her property, but the case and the cases therein referred to only go so far as to hold that where property claimed to be owned by a married woman is purchased and paid for during coverture, in order to protect it from her husband's creditors she must show that she paid for it herself, with her own means, or it will be presumed to have been purchased with the means of the husband. But it would by no means follow that if it appeared affirmatively that money was raised upon the credit of the wife's estate, and property was purchased with such money by her and in her own name, any such presump-

tion would follow because the husband aided her in the transaction by executing such papers as would render it valid.

The present doctrine was passed upon by this court in Waddingham's Ex'rs v. Loker, 44 Mo. 132; and while insolvent debtors will not be permitted to so dispose of their means and industry as to defraud their creditors, we have always protected the wife in the honest enjoyment of her property, so far as permitted by the rules of the common law yet in force among us.

The plaintiff objects to the instructions given at the instance of defendants; but whether technically correct or not, there is no error in them that could have affected the result. The merits of the whole controversy were involved in the one already considered, and the action of the Circuit Court in the premises should be affirmed. The other judges concur.