# CHARLES H. TATE v. LON SANDERS et al., Appellant.

**Division Two, July 5, 1904.**

1. **APPEAL: Bill of Exceptions.** Where the judgment will be affirmed on the merits as to certain respondents, the Supreme Court will not assume the burden of deciding their contention that the appeal and bill of exceptions are not properly before it, the record being voluminous and involved.

2. **PLEAS IN ABATEMENT: Estoppel: Another Suit Pending.** The plaintiff was a defendant in a suit brought by the present defendant concerning this same property. That suit was, however, dismissed as to the present plaintiff with full knowledge on the part of the present defendant. Plaintiff then brought this suit, and afterward was again brought in as a defendant in the prior suit. Defendant in this suit accordingly files a plea in abatement. *Held*, that the plea cannot be sustained, because the plaintiff was not estopped when he brought the present suit.

3. **FRAUDULENT CONVEYANCES: Deed of Trust.** A purchaser of real property left the record title in A, withholding from record the deed from A to her. A went out of town, leaving signed blank deeds with B, who filled in one of the deeds with a description of this property, placed a false acknowledgment on it, and delivered it to C. D lent money on the property to C, and a took a deed of trust. *Held*, that such deed of trust is good against both A and the purchaser.

4. **LIS PENDENS: Ineffective in Suit in Personam.** A brought suit against B and others to enforce certain building restrictions, and filed *lis pendens*. The case was appealed and by the time the Court of Appeals reached a decision the building restrictions had expired, but the court held that the circuit court should assess damages against the defendants for their violation of the restrictions while they were still in force. After that decision, but before final judgment in the circuit court, A lent money on the property and took a deed of trust. *Held*, that the deed of trust takes precedence over the judgment. The opinion of the Court of Appeals eliminated from the case all its equitable features, and the notice of *lis pendens* became *functus officio*.

5. **TITLE TO REAL PROPERTY: Building Restrictions: Fraudulent Conveyance: Execution Sale: Sheriff's Deed.** H as the agent for M purchased certain property in the name of D, who gave safety deeds to M which were not recorded. The prop-

Tate v. Sanders.

erty was subject to building restrictions, and upon a threat-ened violation of those restrictions suit was instituted for an injunction to prevent violation, for removal of the buildings and for damages. Decree went for the plaintiffs, but the Court of Appeals reversed it, except as to damages. Pending final judgment in accordance with the finding of the Court of Appeals, D went out of the city, leaving several signed blank deeds with H. One of these deeds H filled in with the description of the land in question and delivered to V, straw man for T. Damages were awarded the plaintiffs in the circuit court, and the property was sold under execution and deeded by the sheriff to a judgment creditor. *Held,* that the sheriff's deed conveyed a good title as against D and T.

6. **RENTS AND PROFITS: Purchaser at Execution Sale.** A judgment creditor who purchases real property at an execution sale is entitled to rents and profits only from the date when he took title under the sheriff's deed.

7. **FRAUDULENT CONVEYANCE: Incumbrance by Grantee: Bona Fide Mortgagee.** Where a fraudulent grantee places any incumbrance on the property to a *bona fide* mortgagee, he is liable to the defrauded creditor for the amount of the incumbrance.

8. **————: Grantee's Liability for Rents and Profits.** Where a fraudulent grantee takes without any secret trust and claims against both the creditor and the debtor his liability for rents and profits accrues only from such time as the debtor himself would have been liable had the property remained in his hands.

9. **TITLE TO REAL PROPERTY: Execution Sale: Prior Deed.** Whenever the title to real property passes from the debtor to an innocent purchaser prior to the lien of a creditor's judgment, the conveyance defeats the title acquired under execution on the judgment, provided that the purchaser under the execution knows when he buys that such title has passed.

10. **————: ————: Purchase by Creditor: Prior Equities.** Where an execution creditor purchases land under the execution knowing of outstanding equities in the land, he takes subject to such equities.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel G. Taylor* and *Hon. Hugo Muench,* Judges.

REVERSED AND REMANDED *(with directions).*

*Randolph Laughlin* for appellant.

(1) The court erred in overruling appellant's plea in abatement. Robbins v. Conley, 47 Mo. App. 506; Humphries v. Dawson, 38 Ala. 204; Rizer v. Gillpatrick, 67 Kan. 567; Sherwood v. Hammond, 4 Blackf. (Ind.) 504; Eicman v. State, 75 Ind. 46; Bank v. Bank, 7 Gill. (Md.) 428; Webster v. Randall, 19 Pick. (Mass.) 20; Wales v. Jones, 1 Mich. 245; Calliman v. Railroad, 61 Mich. 15; Bickerton v. Burrell, 5 Maule & Selwyn, 383; 16 Cyc. 773; McDermott v. Barnum, 19 Mo. 208; Snodgrass v. Emery, 66 Mo. App. 462; Camp v. Railroad, 62 Mo. App. 85; Busby v. Altes, 140 Mo. App. 715; Ratican v. Depot Co., 80 Mo. App. 528; Reischick v. Klingelhoefer, 91 Mo. App. 430; Sanders v. Dixon, 114 Mo. App. 244; O'Reilly v. Nicholson, 45 Mo. 166; Institution v. Collonious, 63 Mo. 294; McIlrath v. Hollender, 73 Mo. 105; Dodd v. Lee, 57 Mo. App. 171; Turner v. Edmonston, 210 Mo. 420; R. S. 1909, Sec. 2811; Hilton v. Smith, 134 Mo. 508; Kane v. Railroad, 112 Mo. 38; Cooley v. Warren, 53 Mo. 156; Barton v. Martin, 60 Mo. App. 351; Foote v. Clark, 102 Mo. 294. Appellant is substantially injured by the overruling of his plea in abatement. R. S. 1909, Sec. 8211; Dilworth v. Curts, 139 Ill. 520. Moreover appellant has and is entitled to the advantage of opening and closing the proofs in that case. (2) On the merits of this appeal appellant claims against respondents Love, Deacon and Lambert, relief in the alternative, viz.: First, as judgment creditor of Dixon; and failing that, second, under the Manning title. In addition to the relief claimed against Deacon and Lambert, appellant claims cumulative relief against Tate, viz.: First, damages; and second, rents; and third, costs. Before proceeding to consider appellant's claims against Love, Deacon and Lambert, it is necessary to inquire whether appellant is free to have those claims considered separately; that is, whether he is at liberty to urge his

rights as judgment creditor unfettered by the equities
which inhere in his claim under the Manning title.
Appellant contends that he has such right, and upon
three grounds, viz.: Merger.—Sanders' rights as judg-
ment creditor were not merged in the Manning title,
because the doctrine of merger will not be applied by
a court of equity to the union of two estates in the
same person, when it would (1) conflict with the in-
tention, or (2) be against the interest of such person.
Sater v. Hunt, 66 Mo. App. 527; Hayden v. Lauffen-
burger, 157 Mo. 96; Bray v. Conrad, 101 Mo. 331. Right
to Purchase Peace.—One having or claiming a lien
upon or title to land may, for greater security, or to
buy his peace, purchase or procure an outstanding or
adverse claim or title without estopping himself to
deny its validity, and without impairing or affecting
his original claim. Mattison v. Ausmuss, 60 Mo. 551;
Wall v. Shindler, 47 Mo. 282, 285; Landes v. Perkins,
12 Mo. 259; Vasquez v. Ewing, 24 Mo. 39; Cummings
v. Powell, 97 Mo. 536; 16 Cyc. 688. *Tabula in Naufra-
gio.*—Sanders' equity being equal, if not superior, to
the equities of Deacon and Lambert. Sanders had the
right to purchase the legal title (or what might prove
to be the legal title) for the purpose of obtaining the
advantage. McNary v. Southworth, 58 Ill. 473; Car-
roll v. Johnston, 55 N. C. 120; Bispham's Prin. of Eq.
(5 Ed.), p. 374. (3) The Dixon-Verneuil deed was
and is subject to impeachment. R. S. 1909, Sec. 2820.
Where a deed is void (not merely voidable) as to the
grantee, it is void as to all claiming under him. Rust
v. Goff, 94 Mo. 519. The four printed blank forms of
deed, signed by Dixon in May, 1905, were nullities
when signed for want of a written description of any
interest or estate upon which they could take effect.
R. S. 1909, Sec. 2783; Smith on the Law of Fraud
(1897), 854; Fox v. Courtney, 111 Mo. 147; Ayres v.
Probasco, 14 Kan. 175; Adamson v. Hartman, 40 Ark.
58; Ingram v. Little, 14 Ga. 173; Burns v. Lynde, 6

Allen (Mass.) 305; Simms v. Hervey, 19 Iowa, 273; Williams v. Crutcher, 5 How. (Miss.) 71; Ayres v. Harness, 1 Ohio, 173; Preston v. Hull, 23 Gratt. 600; People v. Organ, 27 Ill. 27; Cross v. State Bank, 5 Ark. 525; Upton v. Archer, 41 Cal. 85; Wunderlin v. Cadagan, 50 Cal. 613; Arguello v. Bours, 67 Cal. 447; Bragg v. Fessenden, 11 Ill. 544; Wilson v. Park Comm., 70 Ill. 46; Wallace v. Harmstead, 15 Pa. St. 462; Chase v. Palmer, 29 Ill. 306; Byers v. McClanahan, 6 Gill. & J. (Md.) 250; Basford v. Pearson, 9 Allen (Mass.) 387; Stebbins v. Watson, 71 Mich. 467; Graham v. Holt, 5 Ired. (N. C.) 300; Mosby v. State, 4 Sneed (Tenn.) 327; Gilbert v. Anthony, 1 Yerg. (Tenn.) 69; Wynne v. Governor, 1 Yerg. (Tenn.) 149; Viser v. Rice, 33 Texas 139; Davenport v. Sleight, 2 Dev. & Batt. 381; Kine v. Brooks, 9 Ired. (N. C.) 218; Cross v. Bank, 5 Pike (Ark.) 525; Boyd v. Boyd, 2 Nott. & McC. 125; McMurty v. Frank, 5 Munr. (Ky.) 59; Arrington v. Benton, 19 Ala. 114; Perminter v. McDaniel, 1 Hill (S. C.) 267; United States v. Nelson, 2 Brock. 64, 122; Hord v. Taubman, 79 Mo. 101. The deed being void, and inoperative to pass title as a deed, was equally inoperative to pass title by estoppel. Bushnell v. Loomis, 234 Mo. 371; Burns v. Lynde, 6 Allen (Mass.) 305; Ayres v. Probasco, 14 Kan. 175; Ingram v. Little, 14 Ga. 173; Williams v. Crutcher, 5 How. (Miss.) 71; Preston v. Hull, 23 Gratt. 600; Simms v. Hervey, 19 Iowa, 273; Rust v. Goff, 94 Mo. 511; Mays v. Price, 95 Mo. 603; Cummins v. Leedy, 114 Mo. 477. (4) Appellant contends that the case of Sanders v. Dixon was *lis pendens* on three grounds, viz.: (a) under the statute; (b) at common law; and (c) by estoppel. We shall consider these three grounds in order. (a) *Lis pendens* under the statute. R. S. 1909, Sec. 8211; Aultman v. Daggs, 50 Mo. App. 280; State v. Wellot, 54 Mo. App. 310; State ex rel. v. Johnson, 132 Mo. 105; Hicks v. Jamison, 10 Mo. App. 35; Sutherland on Stat. Con., p. 317, Sec. 239; p. 319, Sec. 240;

Tate v. Sanders.

St. Louis v. Lane, 110 Mo. 254; Warren v. Paving Co.; 115 Mo. 592; Duff v. Carr, 91 Mo. App. 16; Springfield v. Starke, 93 Mo. App. 70; R. S. 1909, Sec. 8057; State ex rel. v. Reilly, 203 Mo. 187; Smith v. Railroad, 143 Mo. 38. (5) The deed from Dixon to Verneuil was "clearly and utterly void" (except as to subsequent incumbrancers and purchasers without notice, R. S. 1909, Sec. 2886, for the reason that it was "made or contrived with the intent to hinder, delay, or defraud creditors of their lawful actions." R. S. 1909, Sec. 2881; Snell v. Harrison, 104 Mo. 188; Allen v. Berry, 50 Mo. 91; Stevenson v. Kilpatrick, 166 Mo. 268; Holdsworth v. Shannon, 113 Mo. 524; Ins. Co. v. Smith, 117 Mo. 293; Garrett v. Wagner, 125 Mo. 464; Snyder v. Free, 114 Mo. 369; Young v. Schofield, 132 Mo. 650; Halsa v. Halsa, 8 Mo. 303; Wallace v. Wilson, 30 Mo. 385; Bierman v. Crecelius, 135 Mo. 386; Walsh v. Stockyards, 66 Mo. App. 260; Hayward v. Ins. Co., 52 Mo. 181; Bank v. Schaumburg, 88 Mo. 228; Turner v. Edmonston, 210 Mo. 411; Baldwin v. Whitcomb, 71 Mo. 651; Ins. Co. v. Smith, 117 Mo. 294; Leeper v. Bates, 85 Mo. 224; Goldsby v. Johnson, 82 Mo. 602; County v. Green, 66 Mo. 498; Long v. Nute, 123 Mo. App. 209; Nelson v. Hall, 104 Mo. App. 473; Stevenson v. Kilpatrick, 166 Mo. 269; Bryant v. Lazarus, 139 S. W. 558; Heatley v. Finster, 2 Johns. Ch. (N. Y.) 158; Moore v. Finster, 2 Johns. Ch. 155; Griswold v. Miller, 15 Barb. (N. Y.) 520; Boils v. Boils, 1 Coldw. (Tenn.) 284; Lynch v. Andrews, 25 W. Va. 751. (6) If we start with the proposition that the Sanders judgment was a lien upon the title, there is no question but that the execution, levy, sale, and sheriff's deed were sufficient to convey that title to and vest it in Sanders. R. S. 1909, Secs. 2172, 2192, 2222, 2231, 2232. Nor is it material that this execution sale was held and the deed made during the pendency of this suit, for the reason that equity adapts its relief to the state of facts existing, not at the beginning, but at the end of

the litigation. The rights of the parties as they exist at the time the decree is rendered govern the court in the rendition of the decree. Randall v. Brown, 43 U. S. (2 How.) 406; Kelly v. Galbraith, 186 Ill. 610; 16 Cyc. 479. Nor is it material that the execution sale was not anticipated and pleaded in the cross-bill of Sanders, for the reason that a court of equity, in adjusting property rights, must pronounce upon the titles as it finds them, whether they be properly set forth in the pleadings or not. Ames v. Scudder, 11 Mo. App. 184, 83 Mo. 193; Noble v. Cates, 230 Mo. 202. We contend, therefore, that the lower court should have decreed appellant to be the owner in fee simple of the property. (7) The equity of Sanders is stronger than the equity of Deacon and Lambert. (8) The court erred in failing to decree that Tate was accountable to Sanders for the rentals of the property. Jacobs v. Smith, 89 Mo. 673; Allen v. Berry, 50 Mo. 90; State v. McBride, 105 Mo. 265; Barnard v. Keathley, 230 Mo. 209; Loose v. Wilkinson, 110 N. Y. 195; Bump on Fraud. Conv. (4 Ed.), p. 602; Secs. 625, 626; 14 Am. & Eng. Ency. Law (2 Ed.), p. 342; 20 Cyc. 368, 635.

*Selden P. Spencer, John H. Drabelle* and *Marshall, Henderson & Becker* for respondents.

(1) All of the proceedings in this case, subsequent to the order overruling the motion for a new trial, on January 2, 1909, are *coram non judice,* and there is no legal appeal before this court, and no legal bill of exceptions in the case, and therefore this court has no jurisdiction of the cause, and there is nothing for this court to do except to dismiss the appeal. (2) Inasmuch as the final judgment or decree in the case of Sanders v. Dixon et al. was a personal one only—an ordinary common law judgment against Dixon and Hynson—the title to the property in suit, neither that of Tate nor that of Love, trustee in the deed of trust owned by respondents Deacon and Lambert, was not

affected by the notice *lis pendens* of the above suit filed
under the statute, and the trial court correctly so held.
R. S. 1899, Sec. 4257; R. S. 1909, Sec. 8211; Bennett on
Lis Pendens, Secs. 131, 132; 13 Am. & Eng. Ency. Law,
p. 879; Briscoe v. Bronaugh, 1 Tex. 326. Where the
decree was merely for money, there is no *lis pendens*
though the suit was filed to enforce a lien against the
property. Linck v. Linck, 214 Mo. 470. *Lis pendens*
creates no lien. Burnliam v. Smith, 82 Mo.'App. 35.
(3) The trial court correctly held, in the matter of
the plea in abatement, wherein the pendency of the
prior suit of Sanders v. Verneuil et al. was urged in
abatement of this action, because: 1st. Both suits
were pending before the same judge in the same divi-
sion of the circuit court of St. Louis city, and the trial
judge had the right and discretion to decide which he
would hear and determine. 2nd. The issues were not
the same in the suit of Sanders v. Verneuil et al. as
were presented in the present suit, at the time the
latter was filed. Nor were the parties the same, Tate
not being a party to the former at that time. 3rd. Un-
der the evidence submitted on said plea and under the
law, the present suit was not an unnecessary one, which
is the test under such a plea. State ex rel. v. Dough-
erty, 45 Mo. 294. 4th. The error, if any, is not ma-
terial, and comes within Sec. 2082, R. S. 1909.

ROY, C.—This is a proceeding to quiet title
brought in the circuit court of the city of St. Louis.

The petition alleges that the plaintiff is the owner
subject to a deed of trust given to secure the payment
of $12,500 and interest to Deacon & Lambert, trustees,
who are made parties.

The defendant Sanders answered and by counter-
claim sought to have the title of plaintiff and the deed
of trust to Deacon & Lambert, declared invalid. The
trial court held that the deed of trust was valid and

245 Mo.—13

that the title of Tate was subject to that deed of trust and subject to a judgment lien held by the defendant Sanders who has appealed.

In 1885, Clemens Place in St. Louis was laid out and the plat filed with building restrictions providing that not more than one dwelling should be erected on any one lot therein. Those restrictions, by their own terms, were to expire August 2, 1905.

On January 4, 1901, one Davidson conveyed to Charles Dixon lot 55 in Clemens Place. Ella Manning was the real purchaser. In making the purchase she acted through her agent, M. P. Hynson, who used Dixon as a "straw man." Dixon was an employee of Hynson and insolvent, and was used by Hynson as a straw man in many transactions in which Mrs. Manning was the real owner, and in other transactions in which other parties were the real owners. Dixon, for a small consideration would take the record title to property in his own name, though he had no real interest therein. He would then execute deeds of trust on the property or convey it just as Hynson might desire. Dixon would execute "safety deeds" in blank as to the grantee, dates and even as to the description of the property and deliver them to Hynson to be used in any way he chose. Mrs. Manning fully understood that Dixon was being used in that way by Hynson in buying and selling property for her. The deed from Davidson to Dixon was recorded February 7, 1901. On January 22, 1901, Dixon executed to Mrs. Manning a safety deed for the property, which deed was kept from the record by Hynson and Mrs. Manning with the intention that it should not be recorded until the end of the Sanders litigation hereafter explained, and with the further intention that Dixon should appear to the world as the record owner of the property until the end of such litigation. That deed was never recorded and was subsequently lost.

On February 7, 1901, Hynson closed a deal by which Nicholls & Ritter loaned $10,000 on the property, for which Dixon executed a note and deed of trust. At that time Nicholls & Ritter knew that the money was loaned to be used in the erection of a double flat building on the lot.

As soon as it became apparent that such building was to be erected the appellant herein, Sanders, and others who severally owned lots in Clemens Place adjacent to the lot in controversy, on February 18, 1901, began a suit, without bond, praying for three different kinds of relief; first, an injunction to prevent the erection of the flats as in violation of the building restrictions; second, a decree ordering the removal of the flats in the event of their erection pending the litigation; third, damages for the breach of said restrictions.

In that suit Dixon, Hynson and the contractor, Hunter, were made defendants.

Notice of *lis pendens* in said suit was filed in the recorder's office on February 26, 1901, and on the same day Sanders served notice in the form of a letter to the defendants in that suit and to G. R. Manning, the husband of Mrs. Manning, and to Nichols and Ritter, telling them of the institution and purposes of that suit and warning them against the erection of such building. All of the money loaned by Nichols & Ritter on that deed of trust was paid over by them in closing the loan on dates beginning August 2, 1901, and ending November 13, 1901. Of that money the sum of $1545 went to pay a prior lien on the property.

The flats were finished sometime in 1901, at a cost of $13,000. Mrs. Manning testified that she bought and built on the property as an investment and that she gave Hynson no authority to sell it.

On February 1, 1902, Dixon and his wife executed two safety deeds to Mrs. Manning, conveying the property in controversy, and differing only in a recital not

material to this discussion. Both these deeds were intentionally withheld from record by Hynson and Mrs. Manning, until one was recorded as hereafter stated.

On February 3, 1902, a decree was entered in Sanders v. Dixon et al., ordering the flats to be torn down, and a great deal of newspaper notoriety was given to the fact. An appeal was taken to the St. Louis Court of Appeals, and an appeal bond was given. On October 17, 1905, the Court of Appeals reversed the decree of the circuit court, in an opinion in which it was held that as the restrictions on the building rights in Clemens Place had expired, the flats should not be torn down, but that the damages sustained by the plaintiffs therein should be assessed and judgment given therefor. The mandate was filed in the trial court November 1, 1905.

In May, 1905, Dixon was intending to leave St. Louis, and he and his wife attached their signatures to four ordinary printed blank forms of warranty deeds, which were not filled up in any respect except as to the signatures, and those blanks were left with Hynson to be used by him as he saw proper.

Dixon testified that Hynson had no authority to use those blanks for any property which Dixon had previously deeded.

In October, 1905, after the reversal of the case of Sanders v. Dixon, Hynson and the plaintiff, contriving to defeat any judgment that might thereafter be rendered for damages in that case, made an arrangement by which Tate was to become the owner of the property for a consideration of $12,500. In order to close that deal, Hynson took one of the blank forms of deeds which had been signed by Dixon and his wife, and filled it up so as to make it in form a deed of conveyance from Dixon and wife to one Louis F. Verneuil, dated and purporting to be acknowledged before Hynson as notary public, November 9, 1905, and filed for

record November 10, 1905. Verneuil was a straw man for Tate. There was much controversy at the trial as to whether the blank on which that deed was written was one which was signed by Dixon and his wife. Sanders contended that it was not. The deed and two others which are conceded to have the genuine signatures of Dixon and wife are before this court for examination and comparison. It is, conceded that Dixon did not acknowledge that deed before Hynson at the time stated in the certificate of acknowledgment. The full amount paid by Tate to Hynson for the property over and above encumbrances was $1914.84. Tate had possession of the property from November, 1905, to November, 1907, when a receiver was appointed. On November 10, 1905, a deed of trust was executed on the property by Verneuil to secure $1000 to John T. Killoren, Jr., which was recorded November 11, 1905. That deed of trust was in fraud of Tate's creditors, and was held by Tate. No money was ever loaned on it.

On November 9, 1905, a safety deed was executed by Verneuil for the property with the name of the grantee blank and delivered to Tate, but it was not recorded.

About November 4, 1905, Tate procured from the Title Guaranty Trust Company a certificate of title to the property which contained the following in reference to the suit of Sanders v. Dixon et al.:

"Notice of suit filed February 18, 1900.

"Attachment Book 3, page 421: Lon Sanders and Ida L. Sanders, his wife, Norman Brown, Jesse B. Mellor, James K. Brugler, A. T. Hollister and William H. Danforth, for themselves and others similarly interested, v. Charles Dixon, M. P. Hynson and James W. Hunter. Affects lot 55 of Clemens Place in city block 3864 west, purposes of same being to enforce certain restrictions, etc.

"Suit under above notice was filed in circuit court February 18, 1901, case No. 20160.

"February 3, 1902, decree for plaintiffs.

"March 25, 1902, appeal allowed to St. Louis Court of Appeals.

"November 1, 1905, reversed and remanded.

"Mandate and opinion filed."

In January, 1906, preliminary to making the loan of $12,500 by Deacon & Lambert, application was made to the title company for a certificate of title and they issued an original certificate which was silent as to the notice of *lis pendens* in the suit of Sanders v. Dixon et al. It showed two deeds of trust prior to the one for $12,500. They were the $10,000 and the $1000 deeds of trust above mentioned, and also showed various special tax liens.

During the examination of Mr. Rohan of the title company he testified as follows:

" 'We also examined for this special case when we made the examination in January, 1906. We made an examination of the conditions of that case in January, 1906.'

"The court sustains an objection as to whether the witness noted the fact of that examination in his abstract at that time, and Sanders excepts.

"The court sustains an objection to Sanders's offer to prove by the witness that there was no change in the condition of the case of Sanders v. Dixon between the time the witness made his report in November, 1905, and the time he made his report in January, 1906, and Sanders excepts.

" 'We issued a certificate January 27, 1906. That was an original certificate. I do not know what had become of the preceding certificate at that time.

" 'In a continuation we take the original certificate and attach to it the result of our investigation. In the original certificate there was no reference to any other. The certificate which I gave Love and Com-

pany contained no reference to the suit. I do not know why that was.'

"(Cross-Examination.) 'The date of the old certificate was November, 1905.

" 'The date of the deed from Dixon to Verneuil was November 9. The reversal of the Court of Appeals in the case of Sanders v. Dixon was November 1.

" 'I think that the reason why we gave a clear certificate on January 27, 1906, and gave a certificate showing the pendency of the suit on November 4, 1905, was because the time for rehearing had not yet expired on November 4.' "

Lambert testified that he saw paragraphs in the paper about the Clemens Place litigation, but did not know what property was involved in that litigation. He also testified that the title company was his agent for investigating the title.

On January 23, 1906, Verneuil made Tate another safety deed for the property which was not recorded until March 14, 1907.

On January 22, 1906, the deed of trust was executed by Verneuil to Edward K. Love to secure the note for $12,500 to G. H. Dudley who was a straw man and who indorsed the note to Deacon & Lambert and the loan was closed January 30, 1906, the deed of trust having been recorded January 27, 1906. The money furnished on this loan was used in paying deeds of trust and taxes with a small balance paid to Tate as follows:

Jan. 30, 1906. On this date the $12,500 Love—Dudley deed of trust was "unloaded" on Deacon and Lambert, their agent, John H. Drabelle, paying therefor as follows:

| To Nicholls—Ritter, in payment of the $10,000 deed of trust of January, 1901 | $10,133.33 | 382 |
|---|---|---|
| For the $1000 Haydel-Killoren deed of trust of November 10, 1905 | 1,008.40 | 383 |
| General and sprinkling taxes of 1905 | 225.24 | 383 |
| Special tax bill for street improvement | 227.98 | 383 |
| Special tax bill for sewers | 41.20 | 383 |
| Special tax bill for sewers | 125.52 | 383 |
| Total | $11,761.67 | 383 |

Balance ($738.33)) was paid to Tate.

On June 1, 1906, Hynson made a statement showing the aggregate of receipts and payments on the property and showing a sale of the property to Tate. There was a conflict of testimony as to whether Mrs. Manning ever saw that statement.

On June 6, 1906, final judgment was rendered in the case of Sanders et al. v. Dixon et al., and judgment was rendered separately in favor of the several plaintiffs therein for the amounts of damages suffered by each of them, amounting in all to $10,500, all of which by assignment of the other plaintiffs about June 14, 1906, became the sole property of Sanders.

On June 16, 1906, Sanders filed suit in the St. Louis Circuit Court against Verneuil, Love, Dudley, Haydel, Killoren, Dixon, Hynson, Nicholls, Ritter, Nicholls-Ritter Realty & Financial Co., and Charles H. Tate. Love was the trustee in the $12,500 deed of trust, and Haydel in the $1000 deed of trust.

That suit set out the facts of the litigation in Sanders et al. v. Dixon et al., and alleged that the deed from Dixon to Verneuil, and the deed of trust from Verneuil for $1000 and for $12,500 respectively were made in fraud of Sanders's rights, and prayed that they might be set aside, and that the defendants Nicholls, Ritter, Nicholls-Ritter Realty & Financial Co., and Tate might be adjudged parties to said fraud, and that any secret title which they might have might be adjudged void. In June, 1906, counsel for Sanders took Tate's deposition in which Tate stated that Verneuil held the property for him (Tate), but denied that witness had a deed for it.

In July following, Sanders's counsel learned from another deposition of Tate that he, (Tate) did have an unrecorded deed from Verneuil.

On November 14, 1906, Tate had filed a demurrer in Sanders v. Verneuil et al., and because of the fact that Tate had no title of record, counsel for Sanders thought they could get a speedier judgment by dis-

missing as to Tate, and they did dismiss as to Tate and all the other defendants except those who had title of record.

On December 20, 1906, Sanders entered into a contract with Mrs. Manning, by which she agreed to deliver to him the deeds executed by Dixon to her and which had not been recorded, and also to make a warranty deed from herself and husband to Sanders, and Sanders was to hold the land as trustee of an express trust for Mrs. Manning, subject to the lien of his judgments, and Sanders agreed to carry on the litigation and if unsuccessful to pay the costs thereof and to account for all realized by him over and above his judgments and costs to Manning.

On December 22, 1906, Deacon & Lambert by consent were made parties in the case of Sanders v. Verneuil et al., and on January 19, 1907, the deeds from Dixon to Manning and from Manning to Sanders were put on record.

On February 20, 1907, this suit was filed by Tate against Sanders, Mrs. Manning and husband, Hynson, Dixon, Verneuil, Love, Dudley, Deacon, Lambert, Haydel, Killoren and Mrs. Dixon.

On October 14, 1907, the cross-bill of Sanders was filed in this case, and on October 17, 1908, execution was issued in the case of Sanders et al. v. Dixon et al. and levied on the property in suit, and on November 11, 1908, the property was sold under the execution to Sanders and he received the sheriff's deed therefor.

On April 22, 1907, Tate was brought back as a party defendant in Sanders v. Verneuil et al., for the reason that he had filed of record the deed from Verneuil to himself.

The pleadings, like the facts, are almost infinitely ramified, consisting of petitions, cross-bills and demurrers, to which are added many motions. Let it suffice to say that they are broad enough to support any finding of fact justified by the evidence, except

that no amendment was made of any pleading so as to show the purchase by Sanders under execution or the sheriff's deed to him.

The trial court held that the deed of trust for $12,500 was a first lien on the property, and that the judgment for $10,500 held by Sanders was a second lien thereon. It also held that the deeds from Dixon to Manning and from Manning to Sanders and the sheriff's deed from Dixon to Sanders were void, and directed that the property be sold by the sheriff subject to the $12,500 deed of trust and that the proceeds, after paying costs and expenses should be used in paying, first, the judgment held by Sanders, and that the balance, if any, should be paid to Tate.

I. The respondents, Love, Deacon and Lambert, make the point that there is no appeal and no bill of exceptions in this case. The condition of the record as to those questions is almost as voluminous and involved as are the facts as to the merits, and as we have reached the conclusion that the judment must be affirmed as to those respondents, we will not assume the burden of deciding whether, *strictissimo jure,* the appeal and the bill of exceptions are properly here.

II. The appellant contends that his plea in abatement should have been sustained.

He had, on June 16, 1906, filed a suit against Verneuil, Tate et al. to set aside the deed from Dixon to Verneuil, stating that Tate was a party to the fraud, in aid of which that deed was made, and asking that any secret title which Tate might have might be declared invalid.

In June and July, after that suit was begun, appellant's counsel became aware, by reason of a deposition of Tate, that he (Tate) held an unrecorded deed from Verneuil for the property.

On November 14, 1906, knowing that Tate held such unrecorded deed, and in order not to be delayed in his efforts to get judgment against those who had interests as shown by the record, Sanders dismissed as to Tate, who had interposed a demurrer to the petition.

After such dismissal, and while he was not a party to such former suit, and before Deacon and Lambert were made parties thereto, Tate brought the suit now being considered, and Tate was not again made a party to that former suit until April 22, 1907.

The action of the trial court in finding against the plea in abatement was proper. Sanders, with full knowledge, dismissed as to Tate, which left Tate free to bring this suit against Sanders. He was not then a party to the case of Sanders v. Verneuil et al., and he was not in any way estopped from asserting his rights by another suit.

III. Mrs. Manning intentionally left the record title to the property in Dixon and withheld from record the deed from Dixon to her. Consequently, whoever got Dixon's title, in ignorance of her rights, was entitled to hold as against her. If the deed of trust held by Deacon & Lambert is good as against Dixon it is good as against her.

The trial court found that the deed from Dixon to Verneuil was made by Hynson by using one of the four blank forms of deeds which had been signed by Dixon and wife and left with Hynson, who filled up all the blanks by inserting the date, the names of the parties, the description of the property and all other essentials, and then placed thereon a false certificate of acknowledgment and delivered the same to Tate, the name of the grantee therein being Verneuil, Tate's straw man.

We concur in that conclusion. It is unreasonable to suppose that Hynson, having taken the precaution

to supply himself with four blanks having the genuine signatures of Dixon and his wife, would discard them and forge Dixon's signature.

The deed from Dixon to Verneuil and some of the blank deeds with the genuine signatures of Dixon and his wife are before us.

From a comparison of them and from all the evidence in the case, we have no doubt of the correctness of our conclusion. The appellant contends that an instrument made in that way is void as a deed. Let the point be conceded. Though void as a deed, it is valid as an estoppel. Dixon left that blank instrument with his signature thereto with Hynson deliberately for the purpose of its being used in just that way.

We have not overlooked the fact that Dixon testified that he gave Hynson no authority to use those blanks in conveying any tract for which he had previously made a deed. But we attach no weight to such statement in the light of the overwhelming facts in this case. What Dixon intended should be done was done. That instrument was placed of record just as Dixon contemplated. Deacon and Lambert, or their examiner, saw it, or the abstract of it, and supposed it was a good deed and invested their money on their faith in it. That result was also intended by Dixon. We need not encumber this opinion with authorities that such conduct on the part of Dixon constitutes an estoppel. As against both Dixon and Manning the deed of trust held by Deacon and Lambert is valid.

IV. Appellant contends that the notice of lis pendens in Sanders v. Dixon et al. had the effect of subordinating the deed of trust held by Deacon & Lambert to the judgment held by Sanders. The opinion of the St. Louis Court of Appeals had the effect of eliminating from that case all its equitable features.

From that time it was purely an action *in personam.* The notice of *lis pendens* became *functus officio.*

In Crocker v. Lewis, 144 N. Y. 140, the facts were that a suit had been brought to restrain the erection of flats contrary to an agreement. Notice of *lis pendens* was filed. Thereafter and before judgment a mortgage was placed on the land. The injunction was made perpetual and the plaintiff recovered costs. It was held in effect that such judgment for costs was subject to the mortgage, being a mere personal judgment which did not relate back so as to supplant the mortgage. It was held that in so far as the suit was a proceeding *in rem* it bound the subsequent mortgage, but as to the recovery of a judgment for costs which was merely *in personam* it did not affect the mortgage.

Bennett on Lis Pendens, Sec. 131, says:

"Where a bill was filed to enforce a lien for purchase money, but was not prosecuted with that view, but, on the contrary, when it came to decree, the decree was so framed as merely to determine the amount of the purchase money, without any provision with respect to the lien, one who had purchased the land pending the bill, although with full knowledge of the equitable lien, was held not bound by *lis pendens,*" and cites Briscoe v. Bronaugh, 1 Tex. 326. St. Joseph Mfg. Co. v. Daggett, 84 Ill. 556, is to the same effect. The reason for the rule is stated in 13 Am. & Eng. Ency. Law (1 Ed.), 879 as follows: , "Were the rule otherwise, it would be in the power of an unjust claimant to greatly embarrass and finally destroy the business of a defendant. It would tend to a prohibition in dealing with defendants."

The title company doubtless took this view of the law when they omitted to note the *lis pendens* on the certificate. The fact that the title company knew of the *lis pendens,* even if it was the agent of Deacon & Lambert, would not alter the case. Knowledge on the part of Deacon & Lambert that there was a suit for

damages pending against Dixon was no notice to them that the deed to Verneuil was made in fraud of Dixon's creditors. We, therefore hold that as against all parties to this litigation the deed of trust held by Deacon & Lambert is a first lien on the property involved, the record being devoid of any evidence tending to show that Deacon & Lambert knew of any fraud on creditors in the conveyance to Verneuil.

V. The trial court found that the conveyance from Dixon to Verneuil was a fraud perpetrated by Tate, Dixon and others against the rights of Sanders. We approve that finding. So far as Tate is concerned that deed is void.

On November 11, 1908, Sanders purchased at execution sale of the property and received the sheriff's deed therefor. The proof of Sanders's title under that deed was in evidence without objection. The trial court held that such deed conveyed no interest whatever. We are of the opinion that it conveyed the title as against Dixon and Tate, and that as against that deed Tate has no title whatever. There was no supplemental pleading filed by Sanders setting up the acquisition of such title. The proof is in without objection. Sanders should be permitted to file a supplemental pleading setting up such facts to the same effect as if made at the trial.

VI. As against all other parties to this suit the title from Dixon through Manning to Sanders is void, and Sanders has no right thereunder.

VII. Appellant contends that he is entitled to rents as against Tate. He was not entitled to any rents until he got title under the sheriff's deed on November 11, 1908. The adjustment of the rents should be made on the basis that Tate is entitled to all that accrued prior to the date of the sheriff's deed

to Sanders and that Sanders is entitled to all accruing thereafter.

VIII.   20 Cyc. 631 holds that where the fraudulent grantee places incumbrances on the property to a bona-fide mortgagee he is liable to the creditor for the amount of the incumbrance, and Bump on Fraud. Con. (4 Ed.), Sec. 623, and Wait on Fraud. Con. (3 Ed.), Sec. 177, are to the same effect.   Of the amount loaned on the $12,500 deed of trust, $1008.40 went to pay the amount of the Killoren deed of trust which was a fraud and was held by Tate.   The sum of $738.33, the balance after paying the $10,000 deed of trust and special taxes, was used in partly paying the expenses and commissions on the loan.   So that the amount of additional encumbrance put on the property was $1746-.73, and for that amount Sanders is entitled to judgment with interest at six per cent per annum from December 26, 1908, the date of the decree herein.

The judgment is reversed and remanded with directions to permit defendant Sanders to file a supplemental pleading setting up the acquisition of title by the sheriff's deed, and to take an account of the rents since the date of said sheriff's deed and to enter judgment in accordance with this opinion.   *Blair, C.,* concurs.

PER CURIAM.—The foregoing opinion of Roy, C., is adopted as the opinion of the court.   All the judges concur.

### ON MOTION FOR REHEARING.

ROY, C.—In a motion for a rehearing, appellant has asked us to review the question of the liability of the fraudulent grantee for rents, his contention being that such grantee is liable for all rents after the conveyance to him.   We have gone through the authorities and will first state what we find the law to be, and then give our reasons for reaching such results.

We can best understand what are the rights of the creditor against a fraudulent grantee by first ascertaining what his rights are against the debtor in the absence of a fraudulent conveyance, leaving out of consideration questions arising on proceedings by attachment.

In the first place, the creditor must obtain a judgment. Secondly, property subject to execution can only be reached by levy and sale thereunder, and the execution of the sheriff's deed in case of the sale of land. Prior to such sheriff's deed, the creditor has no right to call the debtor to account for rents and profits, and after such deed the liability for rents does not go back of such deed.

On the other hand, the debtor or his estate may have property not subject to execution, but which should be applied to the payment of his debts. The debtor may have assigned his property for the benefit of his creditors, or may have been adjudged a bankrupt, or may have died. In which cases, the rents of his real estate, from the time it passed into the hands of the assignee, or the trustees in bankruptcy or administrator, would be collectible by such representative for the payment of debts. There are many other cases where the property of the debtor, for some reason or other, is not subject to execution. In those cases, the creditor may, after obtaining judgment, bring his creditor's bill, and is allowed to collect rents and profits from the bringing of such bill. Most of the authorities require that before the creditor can bring such bill there should be an execution returned unsatisfied.

Fraudulent conveyances are not all alike. Some are made with an understanding between the debtor and the fraudulent grantee that the latter shall hold the same for the use and benefit of the debtor. Such an arrangement is known as a "secret trust." The grantee is, to all intents and purposes the *alter ego*

of the debtor. As he has agreed in effect at least with the debtor to account to him for rents and profits, there is no hardship in compelling him to pay to the creditor that which he agreed to pay to the debtor. There is no controversy anywhere over the question of the liability for rents in such case from the time of the fraudulent conveyance.

But in the case of the ordinary plain fraudulent conveyance, where the grantee takes the property without any such "secret trust" and claiming it not only against the creditor but against the debtor, such grantee is liable for rents only from such time as the debtor himself would have been liable had the property remained in his hands. Such is the result of the fact that the conveyance is simply void. The parties are left just where they would have been had no such conveyance been made. If the debtor is still alive and his property has not passed to trustees in bankruptcy or other legal representatives authorized to collect the rents, the creditor must move straight along the statutory road laid out for him and get his sheriff's deed under execution on his judgment before his right to rents begins.

We will now review the authorities as briefly as possible. It should be stated in the beginning that so far as the results of the cases considered are concerned, there is very little disagreement. The language used is often much broader than the necessities of the case require. The liability of the fraudulent grantee for rents is often discussed without any distinction made between a case of secret trust and one where there is no such trust. The cases holding the grantee who takes without any secret trust liable for rents prior to sale under execution where the property is subject to execution are so few in number and of such a character as to be practically negligible.

245 Mo.—14

The Supreme Court of the United States, in Con-ard v. Atlantic Ins. Co., 1 Pet. 1. c. 443, stated the rights of a judgment creditor as follows: "Now it is not understood that a general lien by judgment on land, constitutes, *per se,* a property, or right, in the land itself. It only confers a right to levy on the same, to the exclusion of other adverse interests, subsequent to the judgment; and when the levy is actually made on the same, the title of the creditor for this purpose relates back to the time of his judgment, so as to cut out intermediate incumbrances. But, subject to this, the debtor has full power to sell, or otherwise dispose of the land. His title to it is not divested or transferred by the judgment to the judgment creditor. It may be levied upon by any other creditor, who is entitled to hold it against every other person except such judgment creditor; and even against him, unless he consummates his title by a levy on the land, under his judgment. In that event, the prior levy is, as to him, void; and the creditor loses all right under it. The case stands, in this respect, precisely upon the same ground as any other defective levy, or sale. The title to the land does not pass under it. In short a judgment creditor has no *jus in re,* but a mere power to make his general lien effectual, by following up the steps of the law, and consummating his judgment by an execution and levy on the land. If the debtor should sell the estate, he has no right to follow the proceeds of the sale, into the hands of vendor or vendee; or to claim the purchase money in the hands of the latter. It is not like the case where the goods of a person have been tortiously taken and sold, and he can trace the proceeds, and, waiving the tort, chooses to claim the latter. The only remedy of the judgment creditor is against the thing itself, by making that a specific title which was before a general lien. He can only claim the proceeds of the sale of the land, when it has been

sold on his own execution, and ought to be applied to its satisfaction.''

2 Freeman on Judgments (4 Ed.), Sec. 338, p. 618, speaking of the rights of the judgment creditor, says: "He has no interest in such land, other than the right to sell it." The same position is held by 1 Black on Judgments (2 Ed.), Sec. 400. The main cause of all the disagreement on this question is Sec. 626 of Bump on Fraudulent Conveyances, which is as follows: "It certainly is not consonant with the principles of the law that the grantee should derive any advantage from his fraud. Consequently, he may be compelled to account for the profits from the time of the transfer. An account may also be taken of what has been received as compensation for the use of the property. The grantee should not be charged with the increased rent and profits arising from improvements made by him."

Then follows a long list of citations, many of which are in direct opposition to the text, and a majority of which are cases of "secret trusts," while others were cases where the property had passed into the hands of administrators, trustees in bankruptcy or other fiduciaries. The leading case relied on by Bump is Loos v. Wilkinson, 110 N. Y. 95. It must be frankly admitted that the language of the opinion in that case is strongly in favor of the right of the creditor to rents. But an examination of that case shows that the transfer was made under a secret trust for the benefit of the debtor. Under the rules above stated by us the grantee was liable because of the fact that he was such trustee. In so far as that opinion declared a grantee who did not take under a secret trust liable for rents, it ought to be regarded as *obiter*. In that respect it is squarely against the decisions of the New York courts, as hereafter shown.

The cases of Marshall v. Croom, 60 Ala. 121; Robinson v. Stewart, 10 N. Y. 189; Ringgold v. Waggoner,

14 Ark. 69; Higgins v. York Buildings Co., 2 Atk. 107; Warner v. Blakeman, 4 Abb. App. (N. Y.) 530; United States v. Griswold, 8 Fed. 556, all of which are cited by Bump in support of his text, hold that the grantee is liable for rents only from the date of the sheriff's deed.

Higgins v. York Buildings Co., supra, is the only English case cited by him, and that case closes with the following paragraph:

"I do not know in the case of fraudulent conveyances, that this court have ever done anything more than remove such fraudulent conveyances out of the way, nor are there any cases that I can find of decreeing profits back, against the original debtor and owner of the estate, received *pendente lite* in this court, in favor of judgment creditors from the filing of the bill, nor any instance of a decree for a sale; but equity follows the law, and leaves them to their remedy by *elegit,* without interfering one way or the other."

Not one of the cases cited by that work on Fraudulent Conveyances holds the grantee liable for rents where there was no secret trust and where the property was subject to execution.

In Robinson v. Stewart, 10 N. Y. 189, the court said: "But the question then arises, whether the complainant was entitled to an account of the rents and profits. I think he was not. As before remarked, he had no lien, and the conveyances were valid between the parties. The remedy of the complainant was to procure the land to be sold, and the proceeds to be applied towards the debts. But until such sale, or at least until the conveyance to the receiver, I know of no principle upon which the defendant could be compelled to account for the rents and profits to creditors at large of the defendant's grantor. If the grantor had lived, and the land had been sold on execution against him, the creditor would have had no right to

the rents and profits until the conveyance by the sheriff.''

Collumb v. Read, 24 N. Y. 505 (515), says: ''Assuming the assignment to be void, as the court has determined, I do not perceive how the plaintiffs, as judgment creditors, would be entitled to the rent of the land until they had perfected their title to it by a sale on their execution, and had obtained a sheriff's deed. They had no title and only a general lien. The debtor has made a fraudulent conveyance. The creditor had a right, if he chose, to sell on his execution, notwithstanding the conveyance.''

It was held in Bryer v. Foerster, 14 N. Y. App. 315, and in Harris v. Buchner, 55 N. Y. Supp. 172, and in Bank v. Brewster, 53 N. Y. Supp. 867, that in a creditor's suit to set aside as fraudulent conveyances of real property, the judgment should not, ordinarily, provide for the appointment of a receiver, but should merely set the conveyance aside, so far as they obstruct the creditor's judgment, and leave him to his remedy by execution and a sale of the property thereunder.

Ringgold v. Waggoner, 14 Ark. 69 was cited by Bump, but it holds the grantee liable for rent only from the date of the sale under execution. United States v. Griswold, 8 Fed. l. c. 572, also cited by that author, says:

''As to the defendant Bush there is no equity in the bill. Admitting all that the plaintiff claims, it was not entitled to the rents and profits before the filing of the bill and the appointment of the receiver. The judgment and lien of the plaintiff only gave it the right to sell the property free from any subsequent encumbrances, and to apply the proceeds on its debt. Ordinarily, the rents and profits prior to the sale on a judgment do not belong to the judgment creditor, nor are they in any way affected by the lien of it.''

In Marshall v. Croom, 60 Ala. 1. c. 132, cited by Bump, the court said:

"Conveyances, deemed fraudulent in law, are sometimes made in secret trust for the benefit of the grantor. In such case, the grantee is intended to be the mere holder of the naked title, while the use and benefit are the grantor's. There is a fitness in holding such fraudulent grantee accountable to creditors for all income and profits held by him; for it is the property of the insolvent debtor. This case is not shown to be of that class. We do not doubt that the title and beneficial use were intended to vest in James B. Marshall. The creditors, complainants in this suit, had and have no title to the property, and no such lien as draws to it a right to the possession, or to the income and profits. They have but a mere equitable lien, in the nature of an execution lien at law; and it exists only by virtue of their bill filed. Its extent is, that creditors, thus instituting suit, thereby acquire a right to have the property sold in payment of their demands sued on, paramount to all after-accruing rights and liens."

We have not overlooked the fact that in Kitchell v. Jackson, 71 Ala. 557, the case of Marshall v. Croom was overruled. The principal reason given for the change of position was the opinion of Chief Justice Marshall in Backhouse v. Jett, 1 Brock. 500. We have examined that case. It is long, and the questions involved therein are complicated, but we are certain that it furnishes no ground for such a change on the part of the Alabama court. The second reason given for the change was that the cases were almost unanimous in favor of the last conclusion, as shown by citations in Bump on Fraudulent Conveyances. If that court had noted the fact that the case which they were in the act of overruling was cited among the "unanimous" decisions, it would have been led to a close scrutiny of that long list of cases. In order to see how

that overruling case is supported by the cases there cited, we will examine them in the order in which they are cited. Jones v. McLeod, 61 Ga. 602 was a case where the debtor was dead and an administration of his estate was pending and it was claimed that there was no property subject to execution. In Sands v. Codwise, 4 Johns. (N. Y.) 536, it was held that where the debtor became bankrupt, the grantee is liable for the rents subsequent to the bankruptcy. [Brown v. McDonald, 1 Hill Ch. (S. C.) 29.] Strike's case, 1 Bland (Md.) 57, was a case of secret trust. Ringgold v. Waggoner, 14 Ark. 69, held that the grantee was liable for rents from the execution sale. In Kipp v. Hanna, 2 Bland (Md.) 26, the plaintiffs were trustees of the debtor under the insolvency laws, and it was held that they could recover rents from the time the property vested in them under the insolvency laws.

We come now to the consideration of the cases decided by this court. In Allen v. Berry, 50 Mo. 90, the sheriff's sale occurred in 1860. The rents were charged for the time from 1860 to 1864, four years. In Jacobs v. Smith, 89 Mo. 673, the fraudulent conveyance was made under secret trust, and was "voluntary and without consideration" (l. c. 680). Moreover the debtor, Sharp, was dead. Execution would not run against the property. There was still another element in that case that distinguished it from this. The title to the land had never been in the debtor. It was conveyed by a third party to the debtor's daughter for a consideration originally furnished by the debtor. Such being the case, execution in favor of the creditor against the debtor would not reach it, and the remedy would be by creditor's bill.

The case of State ex rel. v. McBride, 81 Mo. 349, and again reported in 105 Mo. 265, was a secret trust. [See 81 Mo. l. c. 352.] That case did not involve rents, but simply held that the creditor, instead of selling the land, could sell the minerals dug from the land.

Barnard v. Keithley, 230 Mo. l. c. 235, is cited by appellant, but the question of fraudulent conveyance was not involved therein.

In this case the fraudulent conveyance from Dixon to Verneuil (Tate's straw man), was made Nov. 9, 1905. The judgment in favor of Sanders et al. against Dixon was rendered June 6, 1906. The purchase by Sanders under the execution was made Nov. 11, 1908. There were more than two years during which Sanders could have acquired the right to future rents by selling under the execution. There is no reason why this court should now, contrary to law, give him what he could have obtained by sale in accordance with the law.

II. Complaint is made that we did not, in our original opinion, consider the Dixon-Verneuil deed as to its effects on Sanders's rights. That question is divided into two branches, the Tate branch and the Deacon & Lambert deed of trust. In the latter part of the fourth division of the opinion we held the deed of trust valid as against all the other parties to this suit. In division five we held the Dixon-Verneuil deed void as between Tate and Sanders. Appellant contends that the Dixon-Verneuil deed being held not good as a deed but good as an estoppel, that we ought to explain how it is good as an estoppel in favor of Deacon & Lambert as against Sanders. The explanation is this: whenever the title passes from the debtor to an innocent purchaser prior to the lien of the creditor's judgment, it defeats the title acquired under execution on that judgment, provided that the purchaser under the execution knows at the time of his purchase that such title has passed.

In Mann v. Best, 62 Mo. l. c. 496, it is said: "But the question is, what did he buy? It is well settled as a general proposition, that a purchaser under execution is not a purchaser that comes within the protec-

tion of this well established equitable rule, because he buys only such interest as the judgment debtor has; and, if the interest is subject to equities, although to-. tally unknown to the buyer, the title is still subject to the same equities. [Hart, Leslie & Co. v. F. & M. Bank, 33 Vt. 252; Whitford v. Guager, 3 Hare, 416.] This proposition, however, is very much modified by our recording acts. [See Hill v. Paul, 8 Mo. 479; Davis v. Ownsby, 14 Mo. 175; Valentine v. Havener, 20 Mo. 134.]"

A deed antedating a judgment is good against that judgment if recorded before execution sale under it. [Valentine v. Havener, supra; Wilson v. Beckwith, 140 Mo. l. c. 381; Simpson v. Stoddard County, 173 Mo. l. c. 451.]

Where an execution creditor purchases land under the execution knowing of outstanding equities in the land, he takes subject to such equities. [Rhodes v. Outcalt, 48 Mo. 367.] In Stuart v. Ramsey, 196 Mo. 404, it was held that the purchaser under an execution sale for taxes bought subject to an unrecorded deed existing prior to the judgment of which the purchaser had notice. At the time of Sander's purchase under his execution, he had notice that Deacon & Lambert held a deed of trust executed by Verneuil prior to the date of the judgment. He knew of the rights of Deacon & Lambert under the deed from Dixon to Verneuil, whether that instrument be considered as a conveyance or as a mere estoppel. Sanders knew that Deacon & Lambert had furnished the $12,500 on the faith of the validity of the deed from Dixon to Verneuil, and that Dixon was estopped to deny the validity of such deed. Appellant contends that as the Dixon-Verneuil deed is held void as a deed it cannot be good as an estoppel. We have never held that the estoppel in this case is one "by deed." The so-called "Dixon-Verneuil deed" was not and is not a deed. But the facts of which it is the center constitute an estoppel.

Dixon cannot break it down as against Deacon & Lambert, and Sanders, who bought with notice of Deacon & Lambert's rights, cannot destroy it as against those rights.

We have been cited to cases where deeds held void on account of lack of power to convey or to acquire real estate have been held not to constitute estoppel. On general principles where a party has no power to convey or acquire land by deed, there is no power to convey or acquire it by estoppel. It is also true that there may be void deeds out of which no estoppel arises, but one does exist in this case.

The motion for rehearing is overruled. *Blair, C.,* concurs.

PER CURIAM.—The foregoing opinion of Roy, C., is adopted as the opinion of the court. All the judges concur.