A. R. DERRY v. EMMA FIELDER et al.,
Appellants.

Division One, January 14, 1909.

1. **CONVEYANCE: Grantee Blank: Delivery.** Where a deed is signed and acknowledged but left blank as to the name of the grantee, with authority in the maker's agent to fill in the name before delivery, and the agent as a matter of fact fills in a name and then delivers the deed to the purchaser, it is a valid deed as to such grantee; but the addition of two other names thereafter by the purchaser does not make them grantees. On the other hand, if the deed was executed in blank by the grantors, with a knowledge or understanding that the purchaser was to be their agent to fill in or dictate the name or names of the grantees, then such grantees filled in or caused to be filled in by him became the grantees, whether the manual work of writing in their names was done at one or different times, provided they were all written in before the delivery of the deed to them, or to the recorder to be recorded, which in law is a delivery to all the grantees.

2. ———: To Children: To Avoid Wife's Dower: As Advance-ment: Suit to Declare Trust. Plaintiff bought and paid for land, and was authorized by the grantors to fill in the names of the grantees. He first wrote in the name of an unmarried sixteen-year-old granddaughter, and later those of a daughter and another granddaughter, and then had it recorded, and brings suit to establish a resulting trust in the property. He testified that he bought the property with the intention of selling it as soon as he could dispose of a stock of goods therein, and that he had the deed made to the granddaughter as a matter of convenience in order that he might through her sell it without waiting for his wife, who was in Wash-ington, to sign the deed; and that later, finding he could not sell, and knowing he was growing very old, wrote in the names of the others in order that, should he suddenly die, they might thereby be equalized with his other children as heirs of his estate. He also testified that he had on a previous occasion been compelled to give his wife $100 to induce her to sign a deed to land he was selling and that she told him then that she would never sign another deed. *Held*, first, that, if his intention was to circumvent his wife and deprive her of her inchoate dower, he does not come into court with clean hands, and the trust cannot be declared; second, if his purpose was to make an advancement to his daughter and grand-children, the suit must be dismissed.

3. ———: ———: Advancement: Recall: To Declare a Trust. The owner of property cannot make a deed by way of advancement or gift to his children, and recall it at pleasure by saying it was intended as a deed in trust for his own benefit. And a voluntary deed made without consideration to children is presumed to be an advancement, and it requires clear and cogent proof to rebut that presumption and to declare the trust; and that presumption is not met by a showing of an inequitable and preconceived purpose, without the aid of the children, to cast off his wife's inchoate right of dower.

Appeal from Carroll Circuit Court.—*Hon. John P. Butler,* Judge.

REVERSED (*with directions*).

*Jones & Conkling* for appellants.

(1) It is a presumption of law that, where one purchases property and pays for it and causes it to be deeded to a child or grandchild, he intended it as a

216 Sup—12

gift or advancement. Perry on Trusts (5 Ed.), secs. 143, 144, 145; Curd v. Brown, 148 Mo. 82. (2) Evidence to rebut the presumption of a gift or advancement in a case where a parent deeds or causes property to be deeded to a wife, a child or grandchild, must be so clear and convincing as to remove every reasonable doubt from the mind of the chancellor that it was intended as a gift or advancement. Burdett v. May, 100 Mo. 13; Philpott v. Penn, 91 Mo. 38; Kennedy v. Kennedy, 57 Mo. 73; Ringo v. Richardson, 53 Mo. 385; Johnson v. Quarles, 46 Mo. 423; Viers v. Viers, 175 Mo. 444; Curd v. Brown, 148 Mo. 82; Perry on Trusts, sec. 144. (3) There is no provision in the deed that plaintiff intended the conveyance to operate as a trust in his favor. The deed being the voluntary act or procurement of plaintiff and made without fraud or undue influence, a court of equity will not set it aside and declare it to be a resulting trust. Viers v. Viers, 175 Mo. 444; Curd v. Brown, 148 Mo. 82; Ilgenfritz v. Ilgenfritz, 116 Mo. 429; Kinzey v. Kinzey, 115 Mo. 496; Price v. Cain, 112 Mo. 412. (4) The evidence is not sufficient to support the judgment. The evidence does not rebut the presumption that plaintiff intended the property as a gift or advancement to his daughter and granddaughters. There is no evidence that there was any agreement that defendants were to take and hold the property in trust for plaintiff. Perry on Trusts (5 Ed.), secs. 143, 144, 145; Ilgenfritz v. Ilgenfritz, 116 Mo. 429; Curd v. Brown, 148 Mo. 82; Rogers v. Rogers, 87 Mo. 257.

*L. H. Woodyard* and *Lozier, Morris & Atwood* for respondent.

In order to establish a resulting trust, it is only necessary to show that the consideration-money was paid by the person seeking to establish such trust. Then the presumption is that he intended a benefit

to himself, and a resulting trust arises for him.　1 Perry on Trusts (5 Ed.), sec. 143.　But where the deed is made to the wife, child or grandchild of the person paying the consideration-money, then the presumption of a resulting trust is rebutted and the contrary presumption arises.　1 Perry on Trusts (5 Ed.), sec. 145.　"This presumption is one of fact, and may be rebutted by evidence or circumstances."　1 Perry on Trusts (5 Ed.), sec. 145.　The evidence showed that Annie Fielder, the person to whom the property in question was deeded, was an adult granddaughter, that at the time the property was purchased, respondent was in possession of the same, and has continued in the possession thereof ever since, has collected all rents thereon, paid the taxes and insurance and kept up the repairs; it is further undisputed that the said Annie Fielder has never been in possession of said property since the same was deeded to her, has never made any claim thereto, and has never expended any money thereon; and in view of these facts, according to the above authority, the presumption of the gift or advancement is certainly overcome and rebutted.　1 Perry on Trusts (5 Ed.), sec. 146.　The testimony of the various witnesses shows that respondent never intended the property as a gift or advancement.　The question is one of pure intention on the part of respondent at the time he bought the property and borrowed the money with which to pay for it.　The insertion of the names of Emma Fielder and Ethel Fielder as additional grantees in said deed two years after its delivery could not and did not invest them with any real title or interest in the property.　It was nothing more than an innocent spoliation of the deed by the old man.　Holladay-Klotz L. & L. Co. v. Tie Co., 89 Mo. App. 556; Coney v. Laird, 153 Mo. 408; 2 Pringrey on Real Prop. (1895), sec. 1278.

GRAVES, J.—By his petition the plaintiff sought to establish a resulting trust in and to a house and lot in Bosworth, Missouri.

By his original petition he charged that he bought and paid for the property with his own means, and that the party from whom he purchased made, executed and delivered the deed to him, which deed was to Emma Fielder, Anna Fielder and Ethel Fielder, as grantees. After the evidence was in he was permitted to amend his petition in this regard, so as to read thus: "that said deed was executed in blank, as to the grantee, and before the delivering thereof, by plaintiff's direction the name of Anna Fielder was inserted as grantee in said deed by the agent of said M. S. Gowin and by the said deed the said real estate was conveyed to said Anna Fielder," and the further amendment was made thus: "that on or about the — day of March, 1900, and just before said deed was filed for record, and long after said deed had been executed and delivered to plaintiff, the names of Emma Fielder and Ethel Fielder (now Ethel Fielder Bowman) were inserted in said deed in the blank for the grantee therein with that of Anna Fielder; that no consideration passed from said Emma Fielder or Ethel Fielder (now Ethel Fielder Bowman); that said insertion of said names did not vest in said Emma Fielder or Ethel Fielder (now Ethel Fielder Bowman) in law or fact, any right, title, interest or estate in or to said real estate, but casts a cloud on said title."

Each petition stated that Emma Fielder was the daughter of plaintiff and that Anna Fielder and Ethel Fielder were his granddaughters, being the daughters of the said Emma Fielder. They each charge that the deed was then made as a matter of convenience and not as a gift or advancement, and give as a reason that plaintiff's wife was absent at Washington, D. C., and he wanted to resell the property and had the deed thus made so that he could conveniently convey to

the purchaser. The original petition is not questioned as to sufficiency of allegation nor is the amendment thereof urged as error, so that further detail will not be required. The court *nisi* decreed a resulting trust, and defendants appealed.

Under these circumstances, a rather full statement of facts will be required. Plaintiff, an old gentleman, was in the drug business in the town of Bosworth. He rented the building wherein was located his stock of drugs from one M. S. Gowin, who lived in Kansas, but who had a local agent at Bosworth, S. A. Clark. Plaintiff testified that in 1898, Clark, who had been trying to get plaintiff to purchase the property, finally told him that the property had been sold to another party who would want possession, but that he would give plaintiff three days in which to say whether he would buy; that he was getting old and wanted to sell his stock of drugs, but owing to the size of it could not sell it or give possession of the house; that he finally concluded to buy the house and lot and keep it until he could sell his drug stock and then sell it; the purchase price was $1,000, which he borrowed from the bank and paid to Clark as agent of Gowin; that his wife (a second wife) was on a visit in Washington City, to be gone sometime; that prior thereto he had trouble in getting his wife to sign a deed to another piece of property which he had sold; that he had to give her $100 to sign it; that in view of the fact that he wanted to resell the property soon, and the absence of his wife from the State, he directed Clark to have Gowin and wife sign a deed, with a blank space left for the grantee; that the deed was so made out and acknowledged and returned to Clark; that he then directed Clark to insert the name of Anna Fielder, his granddaughter, as grantee, and when that was done the deed was delivered and the money paid; that he did this for the reason that it would be more convenient to have her make the deed to the purchaser

than to get one signed by his wife whilst in Washington City; that he had confidence in his granddaughter and thought she would deed it to his purchaser; that some time afterwards he spoke to Anna Fielder and told her what he had done and that she agreed to deed to any purchaser he might find (this fact and conversation Anna Fielder emphatically denies). In chief the plaintiff testified as stated above, and strictly maintained that the deed was so made for a mere matter of convenience, with no intent to make a gift or an advancement. Parts of the cross-examination lend some light to the situation. These parts are as follows:

"Q. How long after the deed was made to Anna was it until you had the name of Ethel Fielder and Emma Fielder written in the deed? A. Well, I can't just give you the exact time, but my health was awful poor and I thought, in case anything should happen with me, that Anna having the deed in her name, it would be more than I could afford to give her to equalize her with the other children, and I asked Mr. Lowrance, lawyer, if I couldn't add those two names, he told me, 'Yes,' and he went over into my drug store and added the two names.

"Q. Was that soon after this deed was made? A. No, that was quite awhile; I have no recollection just when the two names were added in, it was quite awhile, though.

"Q. Was it after or before it was recorded? A. It was before it was recorded.

"Q. Now, Mr. Derry, why was it that you had the names of Miss Ethel Fielder and Mrs. Emma Fielder put in this deed as grantees? A. The reason I had that done was simply this: When I made that deed to Anna there, I made it so I wouldn't have any trouble making a deed to the next party if I sold it, and it went on a good while. I rented the property out, and my health got awful poor and I was then about

seventy-five or six years old, and men, at that age, sometimes drop off very sudden, and I thought, in case I should, why, it would all go to Anna, and it was more than I was able to give her to equalize her with the other children and I had those two names put in there; I told Mrs. Fielder a good while afterwards that I had done that way, and I told her at the time, and I says, 'If anything should happen to me,' I says, 'you folks will get that for your part.'

"Q. Then you had these names inserted in this deed so that they would get their part? A. Yes, I says, 'If I should die before I sold the property.'

"Q. Then you didn't deed this property to all three of these girls as a trustee? A. No, sir; well I won't say that, yes, it was a trust you know, continuous trust; I just relied on the confidence I had in my family that they wouldn't go back on me and I put them all three in.

"Q. You didn't add Miss Ethel Fielder's name and Mrs. Emma Fielder's name as a matter of convenience in selling the property? A. Yes, sir, put it there as a matter of convenience, in case I should sell the property, for them to make the deed.

"Q. All three of them? A. Yes, sir.

"Q. How long was your wife gone? A. Oh, I don't know, she was gone some considerable length of time and, as I stated just before dinner, I deeded it to Anna individually because I thinght it would be more convenient for me to get her to make the deed—than to go to all the parties, that is why I deeded it to her individually.

"Q. Mr. Derry, it didn't add anything to the convenience in making the deed to insert the names of two other parties did it? A. If I should die, I wanted them to get it.

"Q. You deeded it to them in case of your death? A. If I should die before I sold it.

"Q. Then you added these names because you wanted all three of these parties to have the property in case of your death? A. Yes, sir.

"Q. Then, in the event of your death, you intended it as a gift or an advancement to them? A. No, sir, it would have been just according to my will.

"Q. When did you first tell your daughter, Mrs. Emma Fielder, about this deed? A. About me adding her name?

"Q. Yes, sir. A. Well, now that part, Mr. Jones, I can't just recollect; it was one time, though, when I was on a visit up there to their house and I was talking with her and told her that I had added her name and Ethel's name, and in case anything should happen with me I calculate for you three to have this property, for your part. That was the first time, but I can't give you the date.

"Q. That was after the deed was recorded that you had that conversation with her? A. Oh, yes, I think it was; yes, I am pretty sure it was.

"Q. Before, or at the time of buying this property, you didn't say anything to either Anna, Ethel or Emma Fielder about drawing the deed to them? A. Before I bought it?

"Q. Yes, sir. A. No, they didn't know anything of it for months after that I know of."

S. A. Clark testified that he was the agent of M. S. Gowin and negotiated the trade; that the deed was in his handwriting; that the name of the grantee was left blank at the request of Mr. Derry; that the deed was returned to him after it had been acknowledged and Mr. Derry paid him the $1,000. Then the following occurred:

"Q. When you closed up the deal, he paid you the money, you delivered the deed to him, what direction did he give you or why wasn't the grantee placed in the deed? A. He told me that he had had some trouble—

"Defendants' counsel objected as incompetent.

"THE COURT: If it was executed in blank, I expect it is competent to know the reason why; the objection is overruled, to which ruling of the court the defendants then and there excepted at the time.

"A.    He told me he had trouble in former conveyances and, on that account, didn't want it deeded to him, but somebody that he would have no trouble in case he sold the property.

"Q.    What, if anything, did he say at that time about wanting to resell and reconvey the property in a short time?    A.    He said he expected to resell the property shortly and didn't want trouble about conveying it.

"Q.    What, if anything, did he say about why he had it deeded to Anna Fielder?

"Defendants' counsel objected.    Court sustained the objections.    To which ruling of the court the plaintiff then and there excepted.

"DEFENDANTS' COUNSEL: I move that the testimony as to the conversation between him and Mr. Derry be excluded.    Court denied the motion.    To which action of the court the defendants then and there excepted at the time."

It will be observed that Clark never testified to the name of any grantee having been placed in the deed prior to its delivery.

For the defendants it was shown as follows:

John Derry, a son of the plaintiff, as a witness testified that he had a conversation with his father at his (the son's home) at Triplett, Missouri.    Upon the subject of this conversation the testimony reads:

"Q.    You may tell the the court what he said in that conversation about this property and this deed?    A.    Father said that he thought he would have the property deeded to his granddaugther, Anna Fielder, for this reason: then she could divide it up with her mother and sister Ethel Fielder.

"Q. About when did that conversation occur? A. Well, now indeed I couldn't tell you, I don't remember the date because I paid so very little attention to it at the time.

"THE COURT: Was Mrs. Derry living? A. Yes, sir.

"THE COURT: Is she the mother of these children? A. No, sir.

"THE COURT: She is a step-mother? A. Yes, sir.

"THE COURT: When was it he said that? A. I don't remember the date.

"Q. Did he have the deed for the property then in blank? A. I don't think the papers had been made up yet; it was a very short time after he came in possession of the property.

"Q. The papers had not at that time been executed at all? A. I think not."

A very rigid cross-examination detracted nothing from this statement, but rather strengthened it. It was developed in the cross-examination that the wife of Mr. Derry, Sr., had refused or talked of refusing to sign further deeds.

By Ethel Bowman (formerly Ethel Fielder, and a grandchild of plaintiff) it was shown, that she was in Bosworth in November or December, 1898, at the home of the plaintiff. The following then was stated:

"Q. You may tell the court whether or not your grandfather said anything to you about having made this deed, or caused it to be made, that we have been talking about? A. He told me of a deed he had made to my sister.

"Q. What did he tell you about it? A. Told me he made the deed to her and left it to her honor to divide.

"Q. To divide with whom? A. My mother and myself.

"Q. What was your age on the first day of November, 1898?

"THE COURT: How old are you now? A. Twenty-three. I was almost sixteen.

"Q. Weren't you sixteen past? A. Yes, in January."

The cross-examination developed nothing new further than that the plaintiff had sent Anna Fielder to school and had great confidence in her.

The testimony of Emma Fielder, the daughter of plaintiff, and the mother of Anna (Fielder) McKenzie, and Ethel (Fielder) Bowman was to this effect in chief:

"Q. You may tell the jury whether or not your father said anything to you about the deed that we have been talking about here? A. Yes, sir, once at my house.

"Q. When was it? A. Well, I suppose it has been four or five years ago; I just can't remember the time, perhaps little longer than that.

"Q. You may tell the court just what he said about that? A. He told me he had deeded the brick building at Bosworth and remarked that me and the girls would get that.

"Q. Did he say why he had deeded it to you? A. Yes, he said he wanted me to get that because it would about balance with what his sons had got; it was valued then at $1,000, and he supposed his sons had got about that much and he thought that would make me even with them.

"Q. Did he tell you where the deed was? A. No, he didn't tell me, and I didn't ask him; he was so hard of hearing I didn't talk much to him, I couldn't.

"Q. Have you told the court all he said? A. No, he said he wanted the use of it his lifetime, and he said in final settlement he wanted me to have my share with the balance and have this property there."

The cross-examination was to the effect that in a

previous conversation the plaintiff had said that he had deeded the property to Annie and he was depending upon her honor to divide it with Ethel. Further pressed she said that plaintiff said if he ever wanted to sell it, he thought Annie would make a deed and he would have no trouble in getting her to make a deed to the party to whom he sold it. She also said she had no idea of claiming the property whilst her father lived.

Anna (Fielder) McKenzie as a witness stated that the first she knew of a deed to her was when her sister returned from Bosworth, her grandfather's residence, in January or February, 1899; that she had no conversation about redeeding the property until he came to her at the residence of his son shortly before bringing this suit, and had with him a deed to be signed by all three grantees and their husbands; that she then told him she did not know whether they would sign it or not, and took the blank deed and one dollar with the understanding that they would consult and see what would be done; that she first declined to take the dollar, but after plaintiff insisted that if they did sign, it would take that to acknowledge the deed, she took it. They finally declined to sign the deed and the blank deed and one dollar was returned, shortly after which this suit was brought.

It fully appears that the parties declined to execute this deed to the purchaser designated by plaintiff. Further, that none of them had any control of the property, but that the control has been in the plaintiff at all times.

The plaintiff being recalled to explain or deny the alleged conversation, among other things said:

"Q. You did not hear your daughter, Mrs. Emma Fielder, testify? A. No, sir, I couldn't get the articulation.

"Q. She stated that, at her home in this county near Rhodes in about the spring of 1901, you told her

that you had this property deeded to her and that she and the girls would get it, you may state whether or not you ever told her that? A. Why, I told her—that was the time after I had added those two names—I told her that I done that. 'Now,' says I, 'Emma, I am getting old,' I don't know how long ago, I was about seventy-six, somewhere along there, and my health was very poor, and she knows I was very poorly, because I was at her house and I was sick, and I was very sick, and I just felt like I was going to drop off.

"Q. What did you tell her? A. I told her that I had her name added and Ethel's added, that in case anything should happen to me before I sold that property that I intended them three to have that property, to equalize her with the children.

"Q. That was in case anything happened to you before you sold it? A. Yes, sir.

"Q. You may state to the court whether or not, prior to that time, you told her that you had it deeded to Anna and that you expected her to make the deed to it if you sold it? A. Well, I don't know as I ever had but the one conversation with her.

"Q. What did you tell her—did you tell her in that conversation why you hadn't had it made to you, did you tell her in that conversation? A. I told her that.

"Q. Told her what? A. Yes, I told her that, because she knew I had trouble with my wife making that deed, and I bought that property with the calculation of speculating and selling it.

"Q. Did you tell your daughter Emma that at the time? A. I told her after I had the additional names in there, that I had her name in that, and in case I should drop off I calculated them to have it as their portion.

"Q. That was in case of your death before you sold the property? A. Yes, sir.

"Q. What, if anything, did you tell her in that conversation about expecting them to sign the deed if you got an opportunity to sell the property? A. Why, I expected them to make the deed.

"Q. Did you tell them so? A. Yes, sir.

"Q. You may state whether or not, at any time, in any conversation with your daughter or either of these other defendants, you told them that they were to have that property, except in so far as you have already stated? A. No, sir, I never had any more conversation, only in case anything should happen with me it should fall to them."

Suffice it to say that plaintiff denied all such conversations in so far as they tended to show a gift or advancement. Other additional bits of evidence may be required in the course of the opinion, but for the present this will suffice.

I. Two questions arise as to the character of this deed as we find it recorded. These are both, however, preliminary to a disposition of the real merits. If this deed was left blank by the makers as to the name of the grantee with authority in Clark, their agent, to fill in the name before delivery to plaintiff, and Clark under direction of the grantors, as a matter of fact filled in the name of Anna Fielder prior to delivery, then the two additional names added by plaintiff would not make them grantees. On the other hand, if from this evidence this deed was executed in blank by the grantors, with the knowledge or understanding that A. R. Derry, the plaintiff, was to be the agent of the grantors to fill in or dictate the name or names of the grantees, then a different question arises. That a valid deed might be signed, acknowledged and delivered, with the name of the grantee left blank, provided there is authority, even orally, in some one to fill in the blank, has never been questioned in this State since the case of Field v. Stagg, 52 Mo. 534. This case has been con-

tinuously followed by the courts since and always with approval. [Brim v. Fleming, 135 Mo. 1. c. 608; Hammerslough v. Cheatham, 84 Mo. 1. c. 20; Kelly v. Thuey, 143 Mo. 1. c. 434; Lawson's Adm'r v. Chapman, 79 Mo. App. 1. c. 626; Roe v. Ins. Co., 78 Mo. App. 1. c. 455; Otis v. Browning, 59 Mo. App. 1. c. 330.]

The only question is whether the grantors expressly directed Clark, their agent, to fill in the names of the grantee for them, or whether the agency to fill in or direct the name of the grantee was left to the plaintiff. If it was left to plaintiff, then he had the right to fill in such grantees as he thought proper, and whether the manual work of writing them in was done at one time or another, can make no difference. Under the evidence in this case there was no actual delivery of this deed until it was placed of record, at which time the law presumed a delivery. We conclude, therefore, that the whole deal through Clark by plaintiff means that the deed should be returned to him (plaintiff) with the name of the grantee left blank, and that he, the plaintiff, had the right to designate and fill the blank with name or names of grantees and that he did so fill in or caused to be filled in the different names at different times, and that all that was done prior to record in this case is unquestioned, so that in our judgment at the date of actual delivery, which is the date of its record, such deed became effective as a deed from the grantors therein named to the grantees therein named, subject of course to the question as to whether or not there is anything in the evidence to authorize the conclusions reached that a resulting trust has been created thereby.

In other words, if by this evidence, as we so conclude, the purpose was to deliver a blank deed to the plaintiff, then the plaintiff could fill in the names of grantees at any time up to the actual or constructive delivery of the deed to the grantee. He could have Clark write in one name and Jones another until the

list was completed. There is nothing in this evidence which authorizes the conclusion that the grantors in Kansas especially made Clark their agent to write in the name of grantee prior to delivery to plaintiff. When plaintiff recorded it there was a delivery and not until that date. The record of the deed is presumptive evidence of delivery, and in this case the suit to declare a trust further admits a delivery. The clear import of the testimony was that plaintiff should designate the grantees, and not the grantors or Mr. Clark. Had the agency been limited to Clark it might be different, but plaintiff reserved the right to dictate the grantee's name or names. Nor does the evidence disclose that Mr. Clark was to hold such deed for its delivery until such act was done. The reasonable inference is that Clark was to deliver the blank deed upon payment of the purchase price, and that plaintiff should select his grantee or grantees and deliver the deed to them. Clark did not attempt to deliver to any grantee to be named. His trade was to get a blank deed and get the $1,000 for his principal, leaving it to Derry to dictate the grantee or grantees.

II. The action here is one to declare a resulting trust. That the money was paid by the plaintiff must be conceded. In cases of resulting trusts "that the evidence of such trusts must be clear, strong, unequivocal, and so definite and positive as to leave no room for doubt in the mind of the chancellor." should be, as a legal question, conceded. [Curd v. Brown, 148 Mo. 1. c. 92, and cases cited.] Where the deed is made to a child or grandchild, or directed to be made to a child or grandchild, the presumption of law is that it was a gift or an advancement rather than a trust. This presumption may be overcome by parol testimony of the character above indicated. This question as to the character of this deed is not without difficulties. That the intent of the parties to a deed governs the char-

acter of the instrument, in a way, must be conceded, but in this case we have no substantial evidence that the intent of the grantees was in any way known until their refusal to redeed was made.  To our mind this evidence indicates one of two things in this transaction.  First, there was either a purpose or desire upon the part of the plaintiff to bar his wife of her prospective dower rights in this real estate by having it secretly deeded to another; or, in the second place, a desire to make a gift or advancement to his daughter and her children.  His own testimony to the effect that he had it deeded for convenience to the grandchild, Anna, when considered in the light of his cross-examination to the effect that he had been compelled to pay his wife $100 to sign the deed in the sale of another piece of property, would indicate that he might have had the inequitable purpose of precluding his wife (a second wife of his own choice presumably) from exercising her right to pass judgment upon the question as to whether or not she would release her inchoate right of dower. The testimony and admissions would tend to uphold this theory to a certain extent.  There evidently had been some trouble between them about signing deeds to real estate.

On the other hand there is ample evidence to sustain the idea that the old gentleman desired, in his old age, to provide for his daughter and grandchildren, and so desiring, before record, and thereby before delivery, caused all the names to be added as grantees, and by his record of the deed, delivered it to such grantees.

We care not which of the two propositions is accepted.  If the purpose was the inequitable one first suggested, then plaintiff does not come into court with clean and equitable hands, and we should so say.  If on the other hand, his purpose at the time he filled in the last names and placed the deed of trust was to make

a gift or advancement to the daughter and grand-daughters, and of this there is much evidence in the record, then the deed should stand. Stating it plainer, a man cannot make or cause to be made a deed by way of gift or advancement to-day, and recall it to-morrow by simply saying that he intended it as a deed in trust for his own benefit. His intent to make it a conveyance in trust must be evidenced by some more reasonable excuse than that of obviating the procuring of his wife's signature to the deed, where it is admitted that they were having trouble upon this question. That the matter of convenience is a mere subterfuge is apparent. Such would not have been thought of but for the fact that the wife was loath to sign away her legal and marital rights.

So that giving this evidence a fair consideration, as a record in an equitable action—one appealing to the strict rules of equity—we are forced to the conclusion that there was the inequitable design upon the one hand, and one which was conceived and executed without aid of defendants, or that there was the more charitable design of making a gift or an advancement to the child and grandchildren. In charity, if for no other reason, it should be said that it was the latter. But say it as you please, a court of equity should not lend its ear. If the purpose was to prevent his wife from a claim of inchoate right of dower, then a court of equity should wash its hands of the case. If, on the other hand, it was a gift or advancement, under the law the bill must be dismissed. We have first the presumption that the deed was intended as a gift or an advancement. We have further the rule of law as to the strength of the testimony required to overcome this rebuttable presumption. The evidence tending to rebut the presumption discloses that the act was founded upon inequitable grounds, i. e., a preconceived purpose to cast off the wife's inchoate right of dower. In such case, a court of equity should weigh with care the

case. In our judgment, the judgment, *nisi*, is wrong. We have always reserved the right to review the evidence in equity cases. To our mind the case should be reversed with directions to dismiss plaintiff's bill; and it is so ordered.

*Lamm, P. J.*, and *Valliant, J.*, concur *in toto*, and *Woodson, J.*, concurs in the result.