THE CAPE COUNTY SAVINGS BANK, A CORPORATION, RESPONDENT, V. R. K. WILSON, T. J. HUNTER, C. B. RUFF, W. C. RUFF, R. P. RUFF AND ANNA FOX, DEFENDANTS, C. B. RUFF, W. C. RUFF, R. P. RUFF AND ANNA FOX, APPELLANTS.—34 S. W. (2d) 981.

St. Louis Court of Appeals.   Opinion filed February 3, 1931.

*R. P. Smith* and *Robert S. Rutledge* for appellants.

18

*Spradling & Dalton* for respondent.

SUTTON, C.—This is an action in equity in the nature of a creditor's bill. George W. Hunter died on March 13, 1928. He left surviving him, as his widow, Emma Hunter, who died on March 16, 1928. Defendant R. K. Wilson is administrator of the estate of George W. Hunter, and also of the estate of Emma Hunter. Defendant Thomas J. Hunter is a brother of George W. Hunter, and his only heir. Defendants C. B. Ruff, W. C. Ruff, R. P. Ruff and Anna Fox are the only heirs of Emma Hunter.

On December 14, 1926, George W. Hunter executed to the plaintiff a promissory note for $761.40. On August 8, 1927, he executed to plaintiff a promissory note for $500, and on October 24, 1927, he executed to plaintiff a promissory note for $93.82. These notes were all made payable on demand, with interest from date at the rate of eight per cent per annum. On August 15, 1928, these notes were duly allowed by the probate court of Cape Girardeau county, in the aggregate sum of $1,442.69.

On July 18, 1919, William B. Schaefer and Annia E. Schaefer, his wife, conveyed by regular warranty deed to George W. Hunter and Emma Hunter, his wife, the east part of Lot 29, in the city of Jackson, in Cape Girardeau county. On April 27, 1920, B. F. Sides and Amelia Sides, his wife, conveyed by regular warranty deed to George W. Hunter and Emma Hunter, his wife, the east part of Lot 7, in said city of Jackson. On March 18, 1929, the east part of Lot 29 was sold under a deed of trust, for the purpose of paying a note secured thereby. After paying off and discharging said note out of the proceeds of such sale, the remainder thereof, amounting to $1,465, was paid over R. K. Wilson, as administrator of the estate of Emma Hunter. On July 5, 1929, the probate court, on petition of R. K. Wilson, as administrator of the estate of Emma Hunter, ordered the administrator to sell the east part of Lot 7 to pay the debts of said estate. Pursuant to said order, said east part of Lot 7 was sold by the administrator and the proceeds thereof, amounting to $1,500, was credited to said estate. It appears that there were two dwelling houses on the property, one on Lot 29, and one on Lot 7. George W. Hunter and his wife and Thomas J. Hunter resided in the dwelling on Lot 29, and the dwelling on Lot 7 was rented out.

Plaintiff, in its petition, alleges that George W. Hunter and Thomas J. Hunter were for more than thirty years engaged in business as partners; that during all that period of time they were engaged in the farming business, livery stable business, taxi business, and pool and billiard room business; that in each of said business undertakings each partner contributed a like amount to the forming and operation of the business, and shared equally in the profits thereof; that both resided in the same house and contributed equally to the support and maintenance thereof; that all deposits of the partnership in the bank were made in the name of George W. Hunter, and that George W. Hunter drew all checks against said deposits, and made and executed all notes for the firm; that George W. Hunter and Thomas J. Hunter, at the time of the death of George W. Hunter, owned an automobile, a pool and billiard room in the city of Jackson, some household and kitchen furniture, and the east part of Lots 7 and 29 in said city, and that said property constituted the business holdings of said partners, and that all of

said property had been acquired and paid for with partnership assets, and that the east part of Lot 7 and the east part of Lot 29 had been conveyed to George W. Hunter and Emma Hunter, his wife, for the use and benefit of the partnership, that the promissory notes executed to the plaintiff by George W. Hunter were executed by him for and on behalf of the partnership; that George W. Hunter and Thomas J. Hunter received cash for said notes, which they used in their partnership business; that the east half of Lot 7 and the east half of Lot 29 were both paid for, maintained and improved by George W. Hunter and Thomas J. Hunter, and that both parties occupied the dwelling on the east half of Lot 29, and collected the rent on the dwelling on the east half of Lot 7, and contributed an equal amount to making improvements and keeping both properties insured; that although the record title to said real estate is in the names of George W. Hunter and Emma Hunter, Thomas J. Hunter and George W. Hunter were the equal owners thereof; that the assets of the estate of George W. Hunter and Thomas J. Hunter are insufficient to pay the demands of the plaintiff, and that unless the proceeds derived from the sale of said real estate be subjected to the payments of the debts of George W. Hunter and Thomas J. Hunter, plaintiff will be unable to collect its notes; and prays: (1) That defendant R. K. Wilson be enjoined from making final settlement of the estate of Emma Hunter, and from making distribution to the heirs of Emma Hunter of the proceeds of the sale of said real estate; (2) that a resulting trust in favor of George W. Hunter and Thomas J. Hunter, be declared in all the proceeds of the sale of said real estate, and that all said proceeds be declared partnership assets, and subject to the payment of partnership debts; and (3) that judgment for plaintiff for the amount of said promissory notes, together with interest, be rendered in favor of plaintiff, and that defendant R. K. Wilson, as administrator of the estate of Emma Hunter, be directed to pay said notes out of the money now in his hands, derived from the sale of said real estate.

Thomas J. Hunter alleges in his answer that the real estate described in the petition was partnership property belonging to the partnership of George W. Hunter and Thomas J. Hunter, and was bought by him with partnership assets and earnings, and that the proceeds of the sale of such real estate belong to the partnership, and prays the court to so decree. He further avers that he is willing that the partnership debts be paid out of the partnership assets in the hands of the administrator. He makes no denial of the allegations in the petition. He alleges that he is entitled to one-half of all the partnership assets, after the payment of the partnership debts, and is entitled to a further interest in the estate of

George W. Hunter, as his only heir, subject to the marital interest of Emma Hunter, and prays the court to so find by its decree to the end that he may receive his proper share on distribution.

The answer of R. K. Wilson as administrator of George W. Hunter, and also of Emma Hunter, sets forth in detail his receipts and disbursements as administrator of said estate, and prays that he may be allowed proper credit for all sums expended, and that may be expended by him, and that he may be allowed proper commissions for services, and the services of his counsel.

The defendants, C. B. Ruff, W. C. Ruff, R. P. Ruff and Anna Fox, by their answer, deny generally the allegations of the petition, and deny specifically that George W. Hunter and Thomas J. Hunter were partners, or that the real estate described in the petition was purchased with partnership funds, plead laches and the Statute of Limitations, charge that the real estate mentioned in the petition was conveyed to George W. Hunter and Emma Hunter for the purpose of defrauding the wife of Thome J. Hunter, and pray the court to find and declare by its decree that all the money arising from the sale of said real estate is the money of said defendants.

The cause was tried to the court. At the conclusion of the trial the court took the cause under advisement, and having been fully advised in the premises adjudged, found and decreed that George W. Hunter and Thomas J. Hunter were partners, and acquired the real estate mentioned in the petition with partnership assets, and that Emma Hunter and George W. Hunter held said real estate for the use of said partners; that the proceeds of the sale of said real estate did not belong to the estate of Emma Hunter, but belonged to the said partners; that the business of said partnership had for many years been conducted with the plaintiff bank in the name of George W. Hunter, and that George W. Hunter had the right and authority to contract debts and obligations for and on behalf of the partnership, and that the debts due plaintiff in this suit were made by said George W. Hunter for and on behalf of the partnership, and were partnership obligations. From this judgment the defendants, C. B. Ruff, W. C. Ruff, R. P. Ruff and Anna Fox, have appealed to this court.

The appellants insist upon a reversal of the judgment here on the ground that the evidence fails to show that a partnership existed between George W. Hunter and Thomas J. Hunter, or that the real estate in question was purchased with partnership funds, or with funds owned in common by said parties, so that there is no basis in the evidence for decreeing a resulting trust. Appellants also insist further that there can be no resulting trust in favor of Thomas J. Hunter, for the reason that he caused the title to the property to be taken in the names of George W. Hunter and Emma Hunter, for the purpose of defrauding the wife of said Thomas J. Hunter

of her marital rights in the property. There can be no question that if it was the intention of Thomas J. Hunter, in making such a disposition of his property, to circumvent his wife and deprive her of her marital rights, a resulting trust cannot be declared in his favor. [Derry v. Fielder, 216 Mo. 176, 115 S. W. 412; Sell v. West, 125 Mo. 621, 28 S. W. 969; Keener v. Williams (Mo.), 271 S. W. 489.] But this does not mean that a trust may not result to him for the benefit of his creditors. If Thomas J. Hunter caused the property to be conveyed to George W. Hunter and Emma Hunter as a cover to enable him to hold and enjoy the property through them, as his own, and the purchase money was in fact paid by him, then George W. Hunter and Emma Hunter must be held to have taken the property in their names for his use, and a trust results to him in favor of his creditors, existing and subsequent. [McLaran v. Mead, 48 Mo. 115; Ebert v. Myers (Mo.), 9 S. W. (2d) 1066; Jamison v. Trust Co. (Mo.), 207 S. W. 788; Friedman v. Holberg, 74 Mo. App. 26; Pattison v. Letton, 56 Mo. App. 325; Sec. 3116, R. S. 1929.]

The evidence shows that George W. Hunter and Thomas J. Hunter engaged together first in the farming business, and later in the livery stable business, taxi business and pool room business, in the City of Jackson. They were engaged in the taxi business and pool room business at the time of the death of George W. Hunter, and also at the time the promissory notes in suit were executed. Their activities in these undertakings covered a period of about thirty years. The evidence is not only cogent, but overwhelming and undisputed, to show that a partnership existed between these parties, and that these various business enterprises were conducted by them as a partnership, and that the purchase price of the real estate involved here was contributed equally by them, and consisted of funds which they owned in common. They paid for the east half of Lot 29 with liberty bonds, and paid for the east half of Lot 7 with cash. These facts were shown by the testimony of Thomas J. Hunter and numerous other witnesses. The business dealings of the firm with the bank, however, were conducted in the name of George W. Hunter. For a number of years George W. Hunter and Thomas J. Hunter owned and lived in a home in Jackson known as the Schwab property. This property was purchased by both of them and they contributed equally to the purchase price. The title to the property, however, was taken in the name of George W. Hunter. The evidence shows, without dispute in the record, that the title to the Schwab property was taken in the name of George W. Hunter in order to circumvent the wife of Thomas J. Hunter, from whom he had separated, and deprive her of her marital rights. The same is true as to the real estate involved here. This was shown by the testimony of Thomas J. Hunter himself, as well as by that of other witnesses.

The appellants contend that the evidence to show the existence of a partnership consisted chiefly of the declarations of the partners, which were incompetent. Of course, it is well understood that a partnership *inter sese* can be created only by contract between the parties. But such contract may be either express or implied. The declarations and acts of the parties, made and done in the presence of each other, or with the knowledge and acquiescence of each other, in the conduct of their business, are original evidence, and not hearsay. Evidence of this character in this case was ample to show an implied contract of partnership *inter sese*. Moreover, the evidence was abundant to show a partnership by estoppel, which, of course, is sufficient to make the members of the partnership severally liable for the partnership indebtedness. Besides, a partnership *inter sese* was shown by the direct testimony of Thomas J. Hunter. Appellants insist that he was incompetent to testify for the reason that the other party to the partnership was dead. As to this, it will suffice to observe that the witness was allowed to testify to material facts concerning the partnership before any objection was made to his competency, and when objection was made on that ground, there was no ruling of the court thereon. When the objection was made counsel for plaintiff remarked that the matter had been passed on repeatedly by our courts. Whereupon the court remarked: "I rather think so." This did not amount to a ruling. It merely indicated that the court was in doubt as to the competency of the witness. Counsel did not insist upon a ruling of the court, but permitted the remainder of the testimony of the witness to come in without further objection on the ground of his incompetency.

In addition to the testimony of Thomas J. Hunter that he and his brother contributed equally to the purchase price of the real estate, and that he caused the title to be put in the name of George W. Hunter and his wife, to circumvent the wife of Thomas J. Hunter, and deprive her of her marital rights in the property, it was shown that George W. Hunter himself repeatedly made statements to his friends and persons with whom he had business dealings, to the effect that he and his brother owned the property together, and contributed equally to the purchase price thereof. It was clearly competent to show these statements. It is a well recognized rule that statements made by a person, since deceased, against his pecuniary or proprietary interest, are admissible. There is a strong presumption of the truth of such statements.

The evidence is abundant, and it is undisputed, to show that this real estate was conveyed to George W. Hunter and his wife to the use of Thomas J. Hunter, so far as his one-half interest in the property is concerned. However, we find no evidence in the record to show that the interest of George W. Hunter in the property was conveyed to his wife for his use. The conveyance created in

him and his wife an estate by the entirety. The presumption is that he caused the property to be so conveyed to make provision for his wife. There is no evidence whatever to overcome this presumption. There is no showing that he was insolvent or owed any debts whatever at the time the conveyance was made, or that the partnership firm of which he was a member, was indebted. Under these circumstances, he had a right to make a gift of the property to his wife, and subsequent creditors cannot question his right to do so. There is no evidence whatever that the conveyance was so made in order to defraud subsequent creditors. The deed was promptly recorded, showing the character of the title conveyed, and subsequent creditors have no right to complain that he so conveyed the property to make provision for his wife. But we see no reason why a court of equity, by proper decree, may not make Thomas J. Hunter's interest in the proceeds of the sale of this property available to his creditors for the satisfaction of their claims against him.

Appellants contend that plaintiff is not entitled to equitable relief for the reason that it had not reduced its claims to judgment. This contention accords with the well settled general rule, but the rule has no application here. Plaintiff had obtained judgment on its notes in the probate court against the estate of George W. Hunter. Thomas J. Hunter did not deny his liability on the notes; on the contrary, he admitted his liability. There was a trust fund in the hands of the administrator, about to be dissipated through a final order of distribution. This fund was the only property available for the satisfaction of the plaintiff's demands. It is the peculiar province of a court of equity to give relief under such a state of facts; to fail to do so would be a denial of justice. [Edwards v. Rosenheim, 74 Mo. App. 621; Kankakee Woolen Mill Co. v. Kampe, 38 Mo. App. 229; 15 C. J. 1391.]

There is no merit in the contention that the circuit court has no jurisdiction of this action, but that jurisdiction rests exclusively in the probate court. The probate court has no jurisdiction of a purely equitable action such as this.

Appellants contend that the petition states a cause of action at law along with a cause of action in equity, and that the right of trial by jury on the cause of action at law, as guaranteed by the constitution, was denied them by reason of the joining in the petition of the cause of action at law with the cause of action in equity. We are not persuaded that there was a cause of action at law stated in the petition. The action is purely one in equity. It is true the petition sets up and asks for judgment on the promissory notes, but nevertheless, the action is in equity, and the whole matter is drawn into equity, and the court, as a court of equity, has power to grant full and complete relief, though in so doing, it may determine

matters that would otherwise be cognizable exclusively at law. But aside from this, the appellants made no request for a trial by a jury on the matter which they claim constitutes a cause of action at law. Manifestly, the facts here do not present a case involving the construction of the Constitution.

Appellants demurred below to the petition on the ground that it joins a cause of action at law with a cause of action in equity, and also moved to strike out the allegations with respect to the promissory notes, and the prayer for judgment thereon, on the ground that the petition improperly commingles two separates causes of action in the one count. Both the demurrer and the motion were by the court overruled, and appellants insist that the court erred in so doing. This contention is necessarily ruled against the appellants by what we have already said. Nevertheless, it may not be impertinent to say that the petition is not demurrable merely because it joins a cause of action at law with one in equity. If the causes of action are so related that they may be otherwise joined, there is no misjoinder. And objection to a petition because it it improperly commingles in one count separate causes of action which may be properly joined is not properly raised by motion to strike, but must be raised by motion to elect.

Appellants urge that plaintiff is not entitled to judgment against Thomas J. Hunter on the notes in suit because the notes were not signed by him, and that this is an action on the notes and that plaintiff must recover on the notes, if at all. We are unable to accept this view. It is true the petition asks judgment on the notes, but it expressly alleges that the money received for the notes was used in the partnership business. And the evidence shows that the money was so used. In fact, it appears that practically all of it was used to purchase the pool room, which unquestionably was owned and conducted by the partnership as a partnership enterprise. The petition and the proof were sufficient to warrant a judgment for the indebtedness as for money had and received for the use and benefit of the partnership. The petition was amended after the cause was tried and submitted, so as to pray judgment for the amount of the notes, or the debt represented by the notes, but this added nothing to the facts as originally alleged, and there is no merit in the complaint that the court erred in permitting this amendment. We entertain no doubt, however, that plaintiff is entitled, on the petition and the evidence, to judgment against Thomas J. Hunter on the notes. All the business dealings of the partnership with the bank was for many years conducted in the name of George W. Hunter. The members of the partnership evidently adopted this name for use in the conduct of their business dealings with the bank, so that the execution of the note to the bank in that name was binding on both the members of the partnership. In this con-

nection, it is well to be reminded that the plaintiff in this action is not suing the appellants, or asking for judgment against them, on these notes. It is asking for judgment against Thomas J. Hunter on the notes, and is seeking to subject to the satisfaction of such judgment, a trust fund which equitably belongs to him so far as his creditors are concerned. There was no denial by Thomas J. Hunter of his liability on the notes. On the contrary, he admitted his liability, and expressed his willingness, in open court, that judgment be rendered against him on the notes. Under such circumstances, in the absence of fraud or collusion between Thomas J. Hunter and the plaintiff, and there is no suggestion of such fraud or collusion in this case, we think the appellants should not be permitted to question the right of the plaintiff to have judgment against Thomas J. Hunter on the notes. If the plaintiff, before bringing this action, had brought its action on the notes against Thomas J. Hunter alone, and thereby obtained judgment thereon against him, as the appellants contend in this case it should have done, then the judgment would have been conclusive as against them in this action, in the absence of a showing of fraud or collusion. Why then should the appellants be permitted to question the right of the plaintiff to have judgment against Thomas J. Hunter on the notes in this action, when he admits his liability, and there is no plea or suggestion of fraud or collusion.

This action is not barred by the Statute of Limitations. The property was conveyed to George W. Hunter and his wife to the use of Thomas J. Hunter so far as his interest in the property is concerned. He continued to possess, use and enjoy the property as his own, up to the time it was sold. The property being placed by him and held in such a secret trust inures to the benefit of his creditors, and the statute does not run, while the property is so held in trust. The statute does not run so long as the trust is not repudiated. [Laughlin v. Laughlin (Mo.), 237 S. W. 1024.] Nor do we find in the record any evidence to show that the action is barred by laches.

This case was tried two years after the death of George W. Hunter. So far as the evidence shows there are no existing debts against his estate, or against the partnership, other than the notes in suit. Just what funds remain in the hands of R. K. Wilson as administrator of George W. Hunter, does not appear. It is admitted, however, that the funds in his hands, as such administrator, are not sufficient to pay the notes in suit.

Plaintiff should have judgment on the notes against Thomas J. Hunter, and R. K. Wilson should be ordered to pay on such judgment any funds in his hands, as administrator of George W. Hunter, available for payment thereon, not exceeding, however, one-half the amount of such judgment, and should be ordered to apply to the

satisfaction of the remainder of such judgment the funds in his hands (not exceeding, however, one-half thereof) as administrator of the estate of Emma Hunter, arising from the sale of the real estate mentioned in the petition. The appellants should be adjudged to pay the costs. A copy of the judgment should be ordered certified to the probate court.

The commissioner, therefore, recommends that the judgment of the circuit court be reversed and the. cause remanded, with directions to said court to enter judgment in accordance with the views herein expressed.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly reversed and the cause. remanded, with directions to said court to enter judgment in accordance with the views expressed in the opinion. *Haid, P. J.,* and *Becker* and *Nipper, JJ.,* concur.