Barney RUBINSTEIN and Laura E. Rubinstein, Appellants,

v.

Saul RUBINSTEIN, Respondent.

No. 44675.

Supreme Court of Missouri, Division No. 2.

Nov. 14, 1955.

L. Clark McNeill and Dorman L. Steelman, Salem, for appellants.

Granville L. Gamblin, St. Louis, Breuer & Northern, Rolla, for respondent.

EAGER, Presiding Judge.

Plaintiffs, husband and wife, instituted this suit to set aside a quit-claim deed from them to Saul Rubinstein (a brother of plaintiff Barney), and for punitive damages. The deed purported to convey various tracts of real estate in Dent County, much of which was improved property in the City of Salem. Briefly, the grounds alleged were "fraud, deceit, forgery and mutilation" by defendant, by which the latter allegedly caused the deed in question "to be made." A second count was included, asking that a conveyance of other property from the father (of both) to the defendant be declared to be for the benefit of grantor's three sons and that conveyances be ordered accordingly. Since no evidence whatever was offered on this second count, we may disregard it entirely. By a second amended petition filed after trial a rather anomalous third count was added alleging that defend-

ant was "estopped" to claim under a later warranty deed from plaintiffs conveying to defendant substantially the same property as the quit-claim deed referred to above. Except for formal admissions the answer denied all allegations generally and pleaded the ten-year Statute of Limitations, Section 516.110 RSMo 1949, V.A.M.S. The trial resulted in a judgment and decree for defendant, with findings of fact, and the judgment divested plaintiffs of all right, title and interest. Plaintiffs have appealed after an unavailing motion for new trial.

One Sam Rubinstein was the father of plaintiff Barney, defendant Saul, and another brother, Arthur, sometimes known (and often referred to) as Otto. Sam was the owner of all the real estate here involved. He died on May 15, 1939, testate, and was buried on May 16, 1939. While the evidence is vague, it may be inferred that Arthur did not engage actively in the business affairs and that the others more or less looked after him, but his legal capacity is not in question. In May, 1939, plaintiff Barney was living in Picher, Oklahoma. On the next day after the funeral of the father, Barney and Saul went to the office of Mr. Ben Shifrin, a lawyer in St. Louis, who had drawn the father's will. There is much controversy as to what then occurred, but all agree that the will was produced, examined and discussed. Plaintiff Barney testified that he then insisted that the will was wholly invalid, but he testified to no valid reason; he further denied making any agreement whatever to deed or assign any interest to Saul, and denied any discussion of withholding the will from probate. At this point it is pertinent to note briefly the most salient provisions of the father's will, which was in evidence. These were: that one-half of all property (after debts and funeral expenses) was left to Saul absolutely, and the other one-half to Saul as trustee for Arthur; that no provision was made for Barney since the testator had, in his lifetime "turned over to him" certain bonds, and this was "all that I desire him to have as his share of my estate"; Saul was appointed executor without bond; there appeared a further provi-

sion (which we note because of the unusual action taken concerning the will) that if either Saul or Arthur should marry a "non-Jew" his respective bequest should be void.

Saul Rubinstein was called as a witness for plaintiffs; he also testified further as part of his own case. The purport of his testimony and that of Mr. Ben Shifrin, the lawyer, was that the brothers brought in the will and said that "as a matter of public relations they had rather not have the will filed." Mr. Shifrin advised against this, but the brothers asked what they might do to carry "the provisions into effect" independently. Mr. Shifrin informed them that Barney and Arthur could quitclaim their interests in the real estate to Saul and assign to him their interests in the personal property, and that Barney and Otto should waive their rights to administer; he further advised that Saul should execute a trust agreement for the benefit of Otto. He was then advised that "they wanted to do it rather than file the will"—and such "was the agreement arrived at in my (Mr. Shifrin's) office." Then or very shortly thereafter Mr. Shifrin prepared a form of contract, a trust agreement, a waiver of the right to administer and a waiver of all claim to personal property; he also stated that he would need a description of all the real estate in order to prepare the deeds.

Saul Rubinstein testified that he received at Salem, Missouri, in an envelope postmarked at Joplin, Missouri, on May 18, 1939 (bearing the return address of Barney) a quit-claim deed in printed form purportedly executed and acknowledged by Barney and his wife, but otherwise in blank. The form of deed was printed by the Joplin Printing Company; in the same envelope were enclosed, executed and acknowledged by Barney, the waiver of the right to administer, and the waiver of claim to personal property (with an unfilled blank for the name of deceased); it may be fairly inferred from the record that the latter papers had been prepared by Mr. Shifrin. All three were purportedly acknowledged in Picher, Oklahoma, on May 18, 1939, before James Voyles, a notary public, whom Barney admitted he knew; all three, with

the envelope, were produced and offered in evidence without objection. Saul mailed the blank quit-claim deed, together with a description of the real estate, to Mr. Shifrin in St. Louis; after some correspondence concerning the description and a rewriting of the description, the quit-claim was completed in Mr. Shifrin's office. It was not recorded until July 28, 1953. Saul apparently proceeded to administer the estate of his father in Dent County as though he had died intestate; therefore, prior to the recording of the quit-claim deed the record title to the real estate was in the three sons jointly. A similar quit-claim deed was executed on June 16, 1939, by Arthur as grantor to Saul as grantee, which was also not recorded until July 28, 1953.

A warranty deed from Barney and Laura E. Rubinstein to Saul as grantee, dated and acknowledged on July 21, 1949, was introduced without objection. It conveyed the same real estate as the quit-claim, with some additions. Saul testified that he received this by mail from St. Louis, and the envelope was produced, identified and offered, postmarked at St. Louis on July 21, 1949, and bearing the return address of Barney, written in longhand. Saul testified that certain parts of this deed were in Barney's handwriting; that Barney had the deed "drawn," that he received it fully completed as offered in evidence, and that Barney drew up the description, except for the fact that Saul furnished him a description of certain lots which had been sold. Saul testified that the circumstances leading up to the execution and delivery of the warranty deed were as follows: that shortly prior to July 21, 1949, Saul found that Barney had been abusive to Otto and had "run him away from home," whereupon Saul said he was going "to squash it all" and would then probate the will; that Barney then volunteered to give him a warranty deed to the property (saying that the quit-claim was "outdated"), provided he was allowed to keep certain Oklahoma real estate and a filling station in Salem, to which Saul agreed. The St. Louis notary identified his certificate of acknowledgment on this warranty deed. The deed was re-

corded on March 1, 1954, after this suit was filed, and Saul testified that he did not realize its full significance until apprised thereof by his attorney. A rough list of descriptions in longhand was identified by Saul as being in Barney's handwriting and also as forming the basis for the typewritten description used in the warranty deed.

Barney Rubinstein denied unequivocally that he executed either deed or any conveyance to Saul, insisting that both deeds were forgeries. So far as his testimony was concerned forgery as such was his only theory. When shown his purported signatures on the quit-claim deed, the warranty deed, and the waiver of claim to the personal property, and asked if they were his, his answers were evasive and he repeatedly insisted that he must know "the contents" of the instrument before answering. His testimony generally does not appear to have been frank or open. Laura E. Rubinstein, his wife, after insisting that both deeds were forgeries, finally admitted on cross-examination that the signature on the warranty deed appeared to be her signature and that she supposed it was, and that Barney's signature looked like it was his, and "I guess it is." She admitted that the St. Louis notary had done "notary work" for them. She insisted that they did not sign the warranty deed with the description included, but did not know just what she thought at the time, and admitted that Barney probably asked her to sign. Saul identified the various signatures of the plaintiffs.

A. banker in Salem testified,—by comparison—that the signatures of Barney on both deeds were genuine. There was evidence that Barney (and his wife) had joined with Saul in executing a deed of trust on one piece of this property in 1946, and in the conveyances of certain lots which were sold. It was also shown that while Saul was in England in July, 1948, Barney had changed the Salem bank account from Saul's name to a joint account for all three of the brothers, and that Saul had apparently acquiesced in this after his return and allowed Barney to draw checks on the account until shortly before the suit was filed. Barney became ill in 1951 and substantial sums were paid from this account or from other proceeds of the property for his medical and hospital bills. An injunction suit was filed in 1946 against the City of Salem by Barney and Saul jointly as "owners" of one piece of the real estate. As one reason for not recording the quit-claim deed earlier Saul testified that it had been misplaced, and that he later found it in Mr. Shifrin's files.

The trial court found: that Barney Rubinstein was left nothing under his father's will; that Barney "prevailed upon" defendant to withhold the will from probate and agreed to perfect defendant's title by quit-claim deed; that the will was so withheld, that Barney and his wife executed, acknowledged and delivered the blank quit-claim deed, and that the blanks were later filled in as agreed; that he also executed and delivered the waiver and renunciation discussed above; that by reason of these matters the will was withheld from probate; that plaintiffs were estopped from denying the validity of the quit-claim deed; that plaintiffs did on July 21, 1949, execute, acknowledge and deliver their warranty deed, as above related, for a valuable consideration; and that plaintiffs had no right, title or interest in the real estate described in the petition. The court then adjudicated the issues accordingly, and adjudged Saul Rubinstein to be the "absolute fee simple owner of the premises described." This is a case where we are inclined to defer in considerable measure to the findings of the trial court, in view of the direct conflicts in the evidence. The assignments in the motion for new trial are very general, but we shall consider the two assignments of appellants on this appeal.

■ The practice of withholding a will from probate is certainly not to be recommended (and was not recommended by Mr. Shifrin in this case); while we have a statute giving the probate courts power to compel the production of a will, Section 468.460 RSMo 1949, V.A.M.S., we have no statute placing upon anyone the direct obligation to produce and probate a will. Limbaugh, Missouri Practice, Vol. 1, p. 727.

In this situation it appears that there is nothing inherently unlawful in an agreement between *all the heirs and all the devisees* to withhold the probate of the will if the property is actually distributed in accordance with the provisions of the will. See 57 Am.Jur., Wills, § 1013; Page on Wills, Vol. 4, p. 951. We have felt impelled to mention this, although appellants' Points and Authorities do not urge a lack of consideration for the quit-claim deed, and that point is not in the case. The specific assignments of appellants are: (1) that the quit-claim deed was void because executed in blank; and, (2) that the 1949 warranty deed was void for want or failure of consideration and that defendant was "estopped" to rely upon it. It may be noted here that no rights of third parties are involved.

█ Plaintiffs produced no evidence whatever of the "fraud, deceit * * * and mutilation" alleged in their petitions; their sole expressed contention was forgery as to both deeds. On that issue the trial court has found against them and we fully concur. Plaintiffs are, however, entitled to use the evidence of defendant Saul Rubinstein in so far as helpful to them and not inconsistent with their own testimony; and, this being an equity case, we may consider any theory supported by the evidence and within the general scope of the pleadings. Collins v. Shive, Mo., 261 S.W.2d 58. Saul testified that he received the quit-claim deed signed and acknowledged, but otherwise in blank. The theory of invalidity on this score seems inconsistent with the express theory of forgery, but we shall consider it as an alternative contention. Appellants cite only: 18 C.J. 188; Samuel v. Frederick, Mo., 262 S.W. 713; Edmonson v. Waterston, 342 Mo. 1082, 119 S.W.2d 318, and L.R.A.1918A, 1154, in support of the proposition. These authorities declare generally that by the weight of authority a deed with only the signature of the grantor is void. In the Frederick case, supra, there was no certificate of acknowledgment at the time of execution and the wife's signature was found to be forged. On somewhat different facts deeds containing certain blanks have been held valid. Derry v. Fielder, 216 Mo.

176, 115 S.W. 412; Edmonson v. Waterston, supra; Ridenour v. Duncan, Mo., 246 S.W.2d 765. It is really not necessary to determine here whether the quit-claim was valid as a deed or not. The trial court held that plaintiffs were thereby estopped to claim title, and we agree. See: Tate v. Sanders, 245 Mo. 186, 149 S.W. 485; 26 C.J.S., Deeds, § 33. Estoppel was not pleaded by defendant, Section 509.090 RSMo 1949, V.A.M.S., but where the issues arise in such manner that there is no opportunity to plead estoppel, the opposing party may not take advantage of the absence of an affirmative plea. Long v. Lackawanna Coal & Iron Co., 233 Mo. 713, 136 S.W. 673; McLure v. National Bank of Commerce in St. Louis, 263 Mo. 128, 172 S.W. 336; State ex rel. Dunklin County v. Blakemore, 275 Mo. 695, 205 S.W. 626. Here plaintiffs did not plead that they had executed a form of deed which was void because in blank; in fact, neither by pleading nor in evidence did they ever admit executing the quit-claim in any form. They merely alleged a very general charge of "fraud, deceit, forgery and mutilation," which, so far as the pleadings were concerned, left defendant largely in the dark. There were no objections to any of the substantive evidence of defendant upon which the estoppel is based. Under these circumstances we think the defense was and is available.

█ But, regardless of the effect of the quit-claim deed, we think the warranty deed of July 21, 1949, would be and is controlling. It was received by defendant in a fully completed and executed form. Plaintiff Barney offered to execute and deliver that deed when an argument arose concerning his treatment of Arthur and the evidence fairly shows that he did voluntarily proceed to prepare, execute, acknowledge and deliver it (together with his wife). Perhaps no new and independent consideration for it is affirmatively shown, but a voluntary conveyance, without valuable consideration, is valid as between the parties. Binnion v. Clark, 359 Mo. 202, 221 S.W.2d 214, 217, and authorities there cited. To set a deed aside or otherwise invalidate it there should be "some other compelling

circumstance" besides a mere lack of consideration (id). And see 26 C.J.S., Deeds, § 16; Robinson v. Field, 342 Mo. 778, 117 S.W.2d 308; Stoops v. Stoops, Mo., 276 S.W.2d 188; 16 Am.Jur., Deeds, § 57. We note also that this deed recited as consideration "certain valuable considerations" and one dollar; in the absence of affirmative proof to the contrary, such recital must be taken as true. Travelers' Ins. Co. v. Beagles, 333 Mo. 568, 62 S.W.2d 800. No rights of third parties were involved when the warranty deed was executed. It thus seems immaterial that the time for probating the will had expired when the warranty deed was executed and delivered. Indeed even the past consideration of having withheld the will from probate would, under some authorities, be sufficient, if indeed any consideration was necessary. 26 C.J.S., Deeds, § 17. And we note here that by the proposal or agreement under which this warranty deed was executed and delivered Barney was allowed, without question, to keep some Oklahoma real estate and a filling station in Salem, which he may or may not have been otherwise entitled to. The status of those properties is not clear.

 It is difficult for us to understand the contention that defendant was "estopped" to rely on the 1949 warranty deed. Counsel for appellants indicate that they were misled by defendant's failure to refer to this deed in his deposition or in the answer to an interrogatory. These matters do not appear in the transcript. It is true that this deed was not recorded until after suit was filed, and possibly plaintiffs' counsel were misled, but they asked for no adjournment or continuance to permit further preparation or additional testimony. Aside from that, however, plaintiffs themselves had certainly known of this deed for nearly five years and they are legally bound to have known of it. Defendant may not be "estopped" because plaintiffs failed to advise their own counsel fully. No rights of others had intervened and, without more, the contention is denied. As concerns the point that the deed should not have been admitted in evidence, the foregoing demonstrates that it was competent and material.

Moreover, no objection was made when it was offered and any such objection comes too late now.

We note that the trust agreement for the benefit of Arthur was not executed. He is not a party here, and we can issue no directions for his benefit. We can only assume that the original agreement inuring to his benefit has in fact been performed, for there is no contrary showing.

It seems apparent here that in certain respects and for their own private reasons these parties permitted the record titles to remain for a time, and certain conveyances to be made, as though plaintiffs were still in joint ownership; perhaps, as Saul said, this was to stop talk by "busy bodies," or in an effort to save embarrassment to plaintiff Barney. Since, however, no rights whatever of third parties have intervened, these facts cannot control the issues here, in view of the findings.

 It is unnecessary to consider the pleaded defense of the Statute of Limitations. There is much here to support the findings and judgment of the trial court, and certainly there is no such clear, cogent and convincing evidence as to justify a decree of cancellation. For one reason, however, we think this cause must be remanded. In the judgment entered the trial court not only adjudged that plaintiffs had no "right, title, nor interest" in the property, but it also adjudged defendant to be the "absolute fee simple owner." We fully agree with the judgment so far as plaintiffs are concerned; however, Arthur (Otto) Rubinstein, the other brother, appears to be the owner of an interest, equitable or otherwise. He executed a quit-claim deed to defendant pursuant to the original oral agreement (including most of the property), but the trust agreement for his benefit was apparently not executed. He is not a party here, and his title or interest may not be adjudicated in this cause. This point has not been briefed, but we feel that this court should take cognizance of it of its own motion. The case will be remanded so that the decree may be revised in such a way as not to affect his interest. We note further

that certain discrepancies appear in the various descriptions of the real estate; these may be considered in any revision of the decree. The judgment and decree is reversed and the cause is remanded for further proceedings in accordance with this opinion.

It is so ordered.

All concur.